Emmitt FOSTER, Appellant,

v.

STATE of Missouri, Respondent.

No. 53318.

Missouri Court of Appeals, Eastern District, Division Four.

March 29, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 20, 1988.

Mary Clare McWilliams, Asst. Public Defender, St. Louis, for appellant.

William L. Webster, Atty. Gen., Deborah L. Ground, Asst. Atty. Gen., Jefferson City, for respondent.

CRANDALL, Judge.

Movant was found guilty of capital murder, Section 565.001, RSMo (1978), and sentenced to death. That conviction was affirmed on direct appeal. *See State v. Foster*, 700 S.W.2d 440 (Mo. banc 1985), *cert. denied,* —— U.S. ——, 107 S.Ct. 14, 92 L.Ed.2d 768 (1986). Movant then brought a Rule 27.26 motion. Movant appeals from the denial of that motion after an evidentiary hearing. We affirm.

A review of the evidence adduced at the murder trial indicates that one of the victims, De Ann Keys, testified that she and her boyfriend, Travis Walker, were awakened about two o'clock in the morning by a phone call from friends of Walker. A short time later, two men arrived at Walker's apartment. Walker went into the living room with them and Keys stayed in the bedroom. One of the men was Michael Phillips. Keys could not identify the voice of the other man. Phillips came into the bedroom and forced Keys at gunpoint to come into the living room and to lie next to Walker on the floor. At that point, Keys saw movant standing over Walker with a pistol in his hand. Phillips ransacked the apartment, looking for jewelry. Before the two men left, they shot both Walker and Keys.

Shortly thereafter, Keys "woke up" and went outside to seek help. She then reentered the apartment and wrote the names "John Lee" and "Michael Philips [sic]" on

an envelope. Keys knew movant only as John Lee and not as Emmitt Foster.

Other evidence at the murder trial reveals that one of her neighbors saw Keys outside and telephoned the police. When the police arrived, they found Walker dead on the living room floor and Keys lying across the bed in the bedroom. Keys had sustained four bullet wounds to her head and face. When she tried to speak, her speech was so slurred that it was unintelligible. She gave police the envelope with the names on it.

Movant did not testify at trial. His defense was alibi.

In the Rule 27.26 proceeding, movant raised numerous claims of ineffective assistance of trial counsel.[1] Appellate review of the trial court's judgment in a Rule 27.26 proceeding is "limited to a determination of whether the findings, conclusions, and judgment of the trial court are clearly erroneous." Rule 27.26(j); *Futrell v. State*, 667 S.W.2d 404, 405 (Mo. banc 1984). Such findings and conclusions are deemed clearly erroneous only if, after a review of the entire record, an appellate court is left with the "definite and firm impression that a mistake has been made." *Stokes v. State*, 688 S.W.2d 19, 21 (Mo.App.1985).

In order to prevail on a claim of ineffective assistance of counsel, a criminal defendant must show (1) that his attorney failed to exercise the customary skill and diligence that a reasonably competent attorney would perform under similar circumstances, and (2) that he was thereby prejudiced. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Seales v. State*, 580 S.W.2d 733, 736 (Mo. banc 1979). Movant must show that there is a reasonable probability that, absent the alleged error, the fact finder would have had a reasonable doubt respecting guilt. *Strickland*, 466 U.S. at 697, 104 S.Ct. at 2069. In determin-

---

1. Movant was represented by two attorneys: one attorney represented movant primarily during the guilt phase of the trial and the second attorney represented movant during most of the voir dire as well as the penalty phase of the trial. For the sake of clarity, we use the term counsel in its singular form.

ing whether a reasonable probability exists, the court must consider the *totality* of the evidence before the fact finder. *Id.*

■ In his first point, movant contends that counsel was ineffective during the voir dire segment of the trial. He first asserts that counsel failed to rehabilitate four veniremen with respect to whether they could impose the death penalty. Only those jurors who refuse to consider the death penalty, not those jurors who merely voice their general objections, may be excluded for cause from a panel. *Witherspoon v. Illinois,* 391 U.S. 510, 522, 88 S.Ct. 1770, 1777, 20 L.Ed.2d 776 (1968).

Our review of the record reveals that the veniremen in question responded to specific questions by the prosecutor and stated that they could not consider the death penalty. At that point, the prosecutor questioned each of them further to clarify their feelings and elicited from each of them that "under no circumstances" could they impose the death penalty.

These veniremen did not voice just a general objection to the death penalty and did not make contradictory statements regarding the death penalty. *Compare Jurek v. Estelle,* 593 F.2d 672 (5th Cir.1979). Admittedly, counsel did not attempt to rehabilitate these veniremen. Given their unequivocal and absolute bias against capital punishment, however, it is doubtful that they were capable of rehabilitation. Movant was not prejudiced by counsel's failure to rehabilitate the four veniremen during the voir dire when it would have been counterproductive to do so.

■ Movant also alleges that counsel's failure to question *each* venire member individually denied him effective assistance of counsel. We disagree. Counsel questioned most of the venire members individually. In addition, counsel posed questions to the panel as a whole and noted agreement by everyone's silence. It was appropriate for counsel to employ group questioning and to consider nonverbal responses in determining a venireman's qualifica-

tion as a potential juror in a death penalty case. *See Bannister v. State,* 726 S.W.2d 821, 826 (Mo.App.1987), *cert. denied,* —— U.S. ——, 107 S.Ct. 3242, 97 L.Ed.2d 747 (1987). Moreover, counsel's decisions about whether to question an individual venire member and about how to conduct the questioning are matters of trial strategy, not subject to a Rule 27.27 proceeding.

In another part of his first point, movant charges ineffective assistance of counsel for failure to object to certain questions by the prosecutor during the voir dire. Movant contends that the prosecutor attempted to commit the jury to a verdict.

■ At the start of the death qualification of the venire members, the prosecutor addressed the venire panel as follows:

[Prosecutor]: Now, I want you in answering my question, [defense counsel's questions], to consider it in the light that you are in the jury room with the process before you of determining whether or not you as an individual can assess the death penalty.

[Defense Counsel]: I object to the form of that question. It is a question of semantics. He is asking for a commitment from the jury. According to the Whitherspoon [sic] decision, the question is: Could you consider the imposition of the death penalty and discuss that fully with your fellow jurors, not whether or not they could assess it in this case.

\* \* \* \* \* \*

[Prosecutor]: Just so I understood your answer and, for the purpose of continuity, as I understand you, under certain instructions and circumstances—nobody is asking you, if you misunderstood me, in any way to commit yourself at this time. You haven't heard any evidence. All I ask you to do, by the way, is to consider it in the prospect of being in that situation....

\* \* \* \* \* \*

[Prosecutor]: [Y]ou could consider the death penalty as a punishment?

Movant relies on *State v. Pinkston,* 79 S.W.2d 1046 (Mo.1935) to support his contention. In that case one of the typical questions the prosecutor posed was:

If you were accepted as a juror in this case, if you believe and found from the evidence beyond a reasonable doubt that the defendant was guilty, if you believe from that evidence that the death penalty was proper penalty to follow a finding of guilt, *would you vote for it?*

*Id.* at 1048. (emphasis added).

In *Pinkston,* the Supreme Court recognized that a juror whose opinion would preclude him from assessing the death penalty should be disqualified as a juror in a capital case. The court stated, however, that the prosecutor had no right to ask a prospective juror what his verdict would be given certain contingencies. *Id.* at 1049.

In the present case, the prosecutor did not ask the venire members what verdict each of them *would* vote if certain facts were shown. The prosecutor merely explained to members of the panel that the question of punishment would arise only if movant was found guilty of capital murder. The prosecutor then asked if the venire members *could* assess the death penalty against movant. The prosecutor's questions were not a request for a commitment from prospective jurors to a future course of action, but constituted a proper inquiry into whether the venire members would be able to follow the court's instructions with regard to assessing punishment. Defense counsel cannot be deemed ineffective for failing to raise a non-meritorious objection. *See Shaw v. State,* 686 S.W.2d 513, 516 (Mo.App.1985).

■ Movant next contends that counsel was ineffective for failing to object when the prosecutor questioned the venire members as follows:

The most fundamental thing in the law, and I'm going to be talking about it, and, of course, so will [defense counsel], is the presumption of innocence, which means that you don't make up your mind. You keep your mind open and you don't decide innocence or guilt until sometime as Judge Luten asks you to. Do you understand that? We don't want your decision now but back to the question. What I would like to ask you is this. You want to wait and see her. You want to hear what she has to say, but the fact that there is only one witness to this crime, do you feel that that is insufficient?

Here, the question was asked because the only person to place movant at the scene of the crime was Keys. Neither a negative nor an affirmative answer to the prosecutor's inquiry could be construed as committing a prospective juror to a particular course of action, i.e., to convict or acquit, or to give credibility and weight to the testimony of any particular witness. *See, e.g., State v. Reed,* 629 S.W.2d 424, 427 (Mo.App.1981). A realistic analysis of the prosecutor's comments and questions indicate that the prosecutor's conduct was a legitimate attempt to discover whether any member of the panel had any preconceived doubts as to the efficacy of the testimony of the only eyewitness to the crime. *See, e.g., Id.* The prosecutor's questioning was proper. Again, movant cannot predicate his claim of ineffective assistance of counsel on counsel's failure to make a non-meritorious objection. *See Shaw,* 686 S.W.2d at 516.

The trial court's finding that counsel was not ineffective during the voir dire was not clearly erroneous. Movant's first point is denied.

■ In his second point, movant claims ineffective assistance of counsel during the penalty phase of the trial. He first alleges that counsel failed to inform him of his right to testify during the penalty phase. Clearly, counsel advised movant that he had the right to testify during the guilt stage of the trial and that, if he did so, his prior convictions could be used to attack his credibility. Movant decided not to testify during the guilt stage and offered the defense of alibi. Movant also did not testify during the penalty stage of the trial, even

though his prior convictions were now admissible as bearing on the issue of punishment. As noted in the testimony of trial counsel at the 27.26 hearing, movant's testimony at that point would have been inconsistent with the defense of alibi during the guilt stage and would not have been beneficial to him.

Further, there is no indication in the record that movant expressed a desire to testify. There is no indication of what his testimony would have been. There is no indication that movant was misled by counsel or that he was ignorant of his right to testify. We therefore find no prejudice.

■ In his next subpoint, movant claims ineffective assistance of counsel because of counsel's failure to make an offer of proof when the trial court sustained objections to certain questions of movant's mother. As noted in *Foster,* 700 S.W.2d at 444, movant's mother had given some of her answers before the objections were made and sustained. The answers were not stricken; and no instruction was given to disregard them. As to the questions that were not answered before objection, the court found that defendant's claim of error was not preserved because of the failure to make an offer of proof.[2] *Id.* As the court stated, "In the main, the trial judge permitted defendant's penalty phase witnesses wide range in their testimony. We fail to see any prejudice resulted to defendant by the court's rulings." *Id.* Since there was no prejudice, the issue of the alleged error of counsel need not be considered. *See, e.g., Strickland,* 466 U.S. at 697, 104 S.Ct. at 2069.

Movant also alleges ineffective assistance of counsel for failure to object to a photograph showing movant wearing a Muslim fez. That claim is factually defective. The record shows that counsel did object to the introduction of the photograph and the objection was sustained. The photograph was neither admitted into evidence nor shown to the jury.

■ In the last part of his second point, movant alleges ineffective assistance of counsel for counsel's failure to object to a certain portion of the prosecutor's closing argument during the penalty phase, to wit:

> There has been some religious discussion here. The Christians have the Golden Rule 'Do unto others what you would have them do unto you.' Muslims reversed this process, and the Koran says, 'Do not do unto others what you would have him do unto you [sic].' And Confucius says, 'Man should do that which is right, not for hope of reward or for fear of punishment. Man should do what is right, because that is what it means to be a man.'

Movant's contention is patently without merit. The prosecutor's argument merely raised different religious views about justice.

The trial court's finding that counsel was not ineffective during the penalty phase of the trial was not clearly erroneous. Movant's second point is denied.

■ In his third point, movant's claim of ineffective assistance of counsel first focuses on counsel's failure to investigate Keys' medical records and to impeach her with an allegedly inconsistent statement contained therein. Her medical records on admission to the hospital indicated that she had been shot "while lying in bed." In the second part of his third point, movant contends that counsel was ineffective for failing to introduce the medical examiner's toxicology lab report showing Walker's blood alcohol content to be .117, "well over the legal limit" for intoxication in Missouri. Movant argues that "[s]aid evidence could have been introduced to impeach the testimony of witness Keys regarding her version of the evenings events, which were void of any reference to the mental state of Walker." The trial court found that movant's counsel was not ineffective for failing to introduce evidence of Walker's blood

---

**2.** Our review of the record indicates that defense counsel did make an offer of proof, albeit untimely and lacking in specificity.

alcohol content and Keys' medical records because "such evidence did not provide movant with a defense and were inconsistent with his defense of alibi."

Here, the only possible materiality of the statement contained in the medical records that Keys was shot in bed is to contradict Keys' testimony that she was shot in the living room. Yet, the statement that she was shot while lying in bed is only significant if Keys never moved after she was shot. A neighbor, however, testified that Keys was outside of the apartment seeking help. Keys' own testimony was that she walked around the apartment after she was shot and went outside to get help. She then reentered the apartment and went to the bedroom, where she wrote the names of the assailants on an envelope she found there. Movant's contention that, if Keys was shot in the bedroom she didn't see him, only has merit if Keys never left the bedroom. The evidence clearly is that she did leave the bedroom. As long as she was able to move about the apartment, Keys would have been able to see movant.

In addition, there was evidence that Keys had sustained several gunshot wounds to the head and face and that her speech was barely understandable. In light of her injuries and impaired speech, it would be difficult to impeach her with an inconsistent statement made on admission to the hospital.

Lastly, the statement in the hospital records was nothing more than a minor inconsistency and added little, if anything, to movant's defense. There was no reasonable probability that impeaching Keys with the inconsistent statement from the medical record would have changed the result of the trial.

Evidence of Walker's blood alcohol content also added nothing to movant's alibi defense. Walker was dead when the police arrived. The argument that evidence of decedent's intoxication would cast suspicion on Keys' version of the events which led up to the shooting is without merit. The trial court's finding that movant failed to demonstrate prejudice from counsel's failure to introduce the evidence in question was not clearly erroneous.

■ In the next part of movant's third point, he charges error in counsel's failure to interview the co-defendant, Michael Phillips. Here, Phillips did not testify at the Rule 27.26 proceeding. Movant gave no indication as to what Phillips' testimony would have been or how it would have been helpful to his case. *See Grant v. State*, 734 S.W.2d 298, 300 (Mo.App.1987). Thus, movant has failed to demonstrate the prejudice component of *Strickland*. *See Sanders v. State*, 738 S.W.2d 856, 861 (Mo. banc 1987).

The trial court's finding that counsel was not ineffective during the guilt phase of the criminal trial was not clearly erroneous. Movant's third point is denied.

■ In his final point, movant claims that counsel was ineffective for failing to preserve in the motion for new trial an objection [3] to the State's use of its peremptory challenges to remove the only black member from the venire panel. Citing *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), movant contends that the prosecution's use of its peremptory challenges resulted in a *prima facie* case of racial discrimination.

At the time of movant's trial in September 1984, in the absence of evidence of a pattern of exclusion over a period of time, the State's use of its peremptory challenges to remove all of the potential black jurors in a particular case did not constitute proof of a constitutional violation. *See Swain v. Alabama*, 380 U.S. 202, 221, 85 S.Ct. 824, 836, 13 L.Ed.2d 759 (1965). On April 30, 1986, the U.S. Supreme Court issued the *Batson* decision, which constitutionally precluded the prosecution from ex-

---

**3.** At trial, counsel objected to the exercise of the State's strike of the one remaining black juror on the grounds of a violation of movant's Sixth Amendment right to a trial by a fair cross-section of the community.

**910**

cluding veniremen from the petit jury solely on account of their race. *Batson,* 106 S.Ct. at 1722–1723. The *Batson* decision is retroactive, but not with respect to those cases which became final before April 30, 1986, the date of the *Batson* decision. *Griffith v. Kentucky,* 479 U.S. 314, 107 S.Ct. 708, 716, 93 L.Ed.2d 649 (1987).

A judgment is final where the judgment of conviction was rendered, the availability of appeal was exhausted, and the time for petition for certiorari had elapsed before the *Batson* decision. *Allen v. Hardy,* 478 U.S. 255, 106 S.Ct. 2878, 2880 n. 1, 92 L.Ed.2d 199 (1986). Here, movant's judgment of conviction did not become final until August 19, 1986, when the U.S. Supreme Court denied certiorari. This was after the *Batson* decision was handed down.

In this case movant is attacking the adequacy of his counsel's representation. Ineffective assistance of counsel is measured against the backdrop of the law at the time of trial. *Scott v. State,* 741 S.W.2d 692, 693 (Mo.App.1987). Ineffective assistance of counsel cannot be predicated on counsel's failure to anticipate changes in the law. *Id.* Because *Batson* was not the law of the land at the time of movant's trial, any objection to the State's use of its peremptory challenges to remove black jurors would have been futile. Counsel cannot be deemed ineffective for failing to preserve a non-meritorious objection. Counsel's performance conformed to that of a reasonably competent attorney under the *Strickland* test.

In addition, movant has failed to demonstrate that the State was motivated by racial discrimination in the use of its peremptory challenges. Movant's counsel made a record on the issue, even before *Batson* was the law. The prosecutor gave a reasonable explanation for the State's use of its peremptory challenge to remove the only black from the panel:

There were no blacks on the panel as it ultimately came down except the lady that was an alternate and she indicated to the Court that she had medical problems and other reservations why she couldn't serve, and I suggested that she be excused because of those problems. The Court did not feel that was merited, so I exercised the preemptory [sic] challenge. That was the only person—black person struck. All the others were excused for cause or because of medical problems or for other reasons.

The court's finding that the State did not strike the remaining black juror "for her racial background" was supported by the record and was not clearly erroneous.

There also was no prejudice to movant in the removal of the only black from the jury panel. The black juror that was struck was an atlernate. An alternate never served on the jury in movant's case. Under these circumstances, the *Batson* issue is academic. Movant's fourth point is denied.

The judgment is affirmed.

SIMON, P.J., and GRIMM, J., concur.