**Salvatore SANTILLAN**

v.

**Dr. George J. BETO, Director, Texas Department of Corrections.**

**Civ. A. No. 72–H–494.**

United States District Court,
S. D. Texas,
Houston Division.

Feb. 15, 1974.

Bertrand C. Moser, Houston, Tex., for plaintiff.

Jack Boone, Asst. Atty. Gen., Austin, Tex., for defendant.

## MEMORANDUM AND ORDER

SINGLETON, District Judge.

Salvatore Santillan, petitioner in this habeas corpus action, was convicted in state court in 1969 for the unlawful possession of heroin. His punishment was assessed by the jury at life imprisonment in the state penitentiary. His conviction was affirmed on appeal. 470 S. W.2d 677 (Tex.Cr.App.1971). After exhausting his state remedies, Santillan filed a petition for writ of habeas corpus in this court pursuant to 28 U.S.C. § 2254. He seeks habeas relief on the

ground that he was denied his right to counsel guaranteed by the sixth and fourteenth amendments, in that his court-appointed counsel at trial was ineffective.[1]

Based on the evidence adduced at the evidentiary hearing conducted by this court and on the record of petitioner's state-court trial, this court concludes that the counsel appointed to represent him in state court was ineffective. The following constitutes this court's findings of fact and conclusions of law.

"It is the particular facts in each case —the actual conduct of the attorney with relation to his client from arrest to final judgment—that determines whether the attorney has provided the constitutionally required effective assistance of counsel." Chalk v. Beto, 429 F.2d 225, 226 (5th Cir. 1970).

With this in mind, this court reluctantly embarks on the mission of telling a factual situation it finds embarrassing to the ideals of the adversary system.

On October 3, 1967, several Houston police officers, armed with a search warrant, entered the home of Leonard Duarte. There they found a quantity of heroin and arrested Duarte, his common-law wife, Janie Campos, Joe Coronado, Conception Santillan, and her husband, Salvadore Santillan. Only Duarte and the petitioner were charged with possession of heroin. It was the police officers' testimony at trial that several packages of heroin were found on a table in one room and that several other packages of heroin were found in petitioner's pocket when he was searched in another room. Although petitioner never had an opportunity to present his side of the story, he maintains that no heroin was found on him.

After being released on bond, two burglary and two felony theft charges were filed against petitioner.

Petitioner filed an affidavit to the effect that he was too poor to hire an attorney. Thereafter, on April 12, 1968, an attorney was appointed to represent him on the two burglary and two felony theft charges. The appointed attorney could not remember being officially appointed to represent petitioner on the possession charge but explained that it was the practice at that time that an attorney appointed to represent an accused on one charge would usually represent him on any other charge that may be pending against him. There is no record of an appointment on the possession charge.

The attorney talked to the petitioner at the time of the examining trial but discussed only the burglary and theft cases. Approximately thirty days later the attorney talked to petitioner at the Texas Rehabilitation Center, but there was no discussion of the heroin case. The next meeting was in the "hold-over cell" at the Harris County jail. It lasted for approximately fifteen minutes. At this meeting the attorney informed the petitioner that he had worked out a plea bargain on the burglary and theft charges—a plea of guilty in exchange for a recommendation by the prosecutor for a ten-year sentence. Petitioner told the attorney that if he could get the heroin possession case added to the agreement, he might accept it. At that time the attorney had no knowledge of the heroin case.

On October 31, 1968, petitioner wrote a letter to his attorney stating in part:

" . . . understanding that I will stand trial on my narcotic case, I feel that it would be wise for me to give you a few details on the case, since I know that you know nothing of the case, and surely it would be very foolish to stand defenseless before a tribunal.

---

1. Other grounds for habeas relief were raised in the petition; however, due to the particular disposition of this case, only one ground need be discussed. It should be noted, however, that respondent has argued with respect to each of petitioner's other four grounds that the errors were waived by failure of trial counsel to make a contemporaneous objection. See Henry v. Mississippi, 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965).

"So I must kindly ask you to lend me a few moments of your time, in coming over to speak to me, so I will give you and [sic] idea on what I am up against, there is some writings that I want you to read, I wrote them for my defense. I thank you for your devoted attention, and remind you to please come over as soon as possible, for my behalve, because I most certainly don't want to go on trial unprepared."

Although unclear from the testimony when the next meeting was held, petitioner testified that at that meeting he told his attorney that contrary to the police officer's testimony no heroin was found on him and that he gave the attorney the names and telephone numbers of witnesses who would corroborate this defense.

The next meeting petitioner had with his attorney was on the day of trial, February 25, 1969. At this time, petitioner was still under the impression that he was going to trial at that time on the burglary and theft charges. He was that morning informed that he was to stand trial on the heroin possession case. He asked his attorney whether he had contacted his witnesses. The attorney said that he could not locate Duarte and had heard that he had jumped bond and was in Canada. Petitioner told him that this was not true because he had seen Duarte within the last three or four days at the rehabilitation center.[2] Asked about the other witnesses, the attorney said that he would try to contact them during the court's recess.

The attorney testified that he tried to call one of the witnesses (Janie Campos) but could not find her. Petitioner stood trial with no witnesses in his behalf. The attorney did not ask the trial judge for a continuance in order to locate the witnesses.

Duarte testified at the habeas corpus hearing that had he been called as a witness at petitioner's trial he would have testified that the heroin the police testified was found in petitioner's pocket was actually found by the police on a table in a different room from where petitioner was arrested.[3]

No motion to suppress the heroin was made, and when the state offered into evidence the heroin (without which the state admittedly would not have had a case against petitioner) there was no objection made.

Excluding the noon recess, the entire trial lasted less than two hours. After a motion for acquittal was overruled, the defense rested without calling a witness. Although petitioner wanted to testify in his own behalf in order to contradict the police officer's testimony and to place before the jury his only defense, he was persuaded by his attorney not to testify. The attorney explained at the habeas corpus hearing that he persuaded petitioner not to take the stand because he was afraid that the prosecution, through impeachment, would inform the jury that petitioner had been indicted for burglary and theft and that he had been acquitted of murder. By statute, such evidence is inadmissible in a Texas criminal trial.[4]

---

2. It was established at the habeas corpus hearing that Duarte was "booked in" at the Harris County jail January 28, 1969; that he was transferred to the Rehabilitation Center February 10, 1969; and that he remained there until September 9, 1969, at which time he was transferred to the Texas Department of Corrections. Thus, he was at the Rehabilitation Center before, during, and after petitioner's trial.

3. Under Texas law, proof of mere presence at a place where narcotics are being used or possessed does not, standing alone, justify a finding of constructive or joint possession, there must be some "affirmative link" be-

tween the accused and the contraband. See, e. g., Culmore v. State, 447 S.W.2d 915 (Tex.Cr.App.1969); Shortnacy v. State, 474 S.W.2d 713 (Tex.Cr.App.1972); Ramos v. State, 478 S.W.2d 102 (Tex.Cr.App.1972); Carr v. State, 480 S.W.2d 678 (Tex.Cr.App. 1972); Hausman v. State, 480 S.W.2d 721 (1972); Payne v. State, 480 S.W.2d 732 (Tex.Cr.App.1972); Williams v. Texas, 498 S.W.2d 340 (Tex.Cr.App.1973).

4. Article 38.29, Vernon's Ann.C.C.P., in pertinent part provides:
   "The fact that a defendant in a criminal case, or a witness in a criminal case, is or has been, charged by indictment, information

The jury deliberated only eleven minutes before returning a verdict of guilty and deliberated but twenty-six minutes before assessing punishment at life imprisonment. It is also noted that even though petitioner had not been before convicted of a felony, his attorney did not inform the petitioner that he qualified for probation nor did he file the required motion for probation. Article 27.02, Vernon's Ann.C.C.P.; Article 42.12 § 3a, Vernon's Ann.C.C.P.

Petitioner was sentenced March 14, 1969, at which time petitioner's attorney gave notice of appeal to the Court of Criminal Appeals. An entire year lapsed before the attorney filed a pauper's oath and requested a transcript for purposes of appeal March 9, 1970. During this time petitioner wrote his attorney on several occasions (although the attorney has no record of the letters)— no letter was answered. Finally on April 8, 1970, petitioner wrote a letter to the trial judge informing him that his attorney would not answer his letters. Seven days later the attorney was relieved of representation of petitioner and another attorney was appointed.

Petitioner's court-appointed attorney at trial made no effort to and did not investigate the scene of the offense, interviewed none of the witnesses given him by petitioner,[5] and never talked with any member of petitioner's family, even though one of the people arrested at the scene of the offense but not charged was petitioner's wife.

The attorney, in partial mitigation of his performance, testified that at the time he represented petitioner he was "trying three appointed criminal cases a week" and also had some retained cases. He further testified that he was simply unable to understand petitioner but did not request an interpreter, did not ask for a continuance, and did not ask to be relieved of representation.

■■ But even if the attorney were able to sufficiently explain the poor performance, that is not the question. The attorney is not on trial here nor is the Harris County Criminal Docket. At issue is whether this indigent petitioner's liberty is being unlawfully restrained. The purpose of the writ of habeas corpus, one of the oldest legal tools,[6] is to remedy unlawful imprisonment. It has been esteemed "the symbol and guardian of individual liberty," Peyton v. Rowe, 391 U.S. 54, 58, 88 S.Ct. 1549, 1551, 20 L.Ed.2d 426 (1968), the "best and only sufficient defense of personal freedom." Ex parte Yerger, 75 U.S. (8 Wall.) 85, 95, 19 L.Ed. 332 (1868). Unquestioned is the axiom that a person accused of crime, regardless of his financial station in society, must have an attorney to assist him at trial if he wants one. Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); Sixth Amendment, United States Constitution; Fourteenth Amendment, United States Constitution. "By 'assistance of counsel' the Sixth Amendment does not mean any assistance will do, but that there

---

or complaint, with the commission of an offense against the criminal laws of this State, of the United States, or any other State shall not be admissible in evidence on the trial of any criminal case for the purpose of impeaching any person as a witness unless on trial under such indictment, information or complaint a final conviction has resulted, or a suspended sentence has been given and has not been set aside, or such person has been placed on probation and the period of probation has not expired."

5. Even if the attorney's testimony that petitioner gave him the names of no witnesses were believed (which this court refused to believe), it is noted that each of the witnesses the petitioner requested were written on the return of the search warrant. The attorney admitted that he did obtain a copy of the warrant prior to trial even though he "had to pay $3 out of his own pocket" to get one.

6. "The ultimate threads have not been traced but within a century after the victory of William in 1066 when the population of the world did not much exceed that of the United States today, and the 'blessed plot' now known as England consisted of a small tribe of rude men still eating with their hands, the writ of habeas corpus was in general use." Skol, Federal Habeas Corpus, 3 (2d Ed. 1969).

must be effective assistance." King v. Beto, 305 F.Supp. 636, 637 (S.D.Tex. 1969). This circuit interprets right to effective counsel to mean:

" . . . not errorless counsel, and not counsel judged ineffective by hindsight, but counsel reasonably likely to render and rendering reasonably effective assistance."

MacKenna v. Ellis, 280 F.2d 592, 599 (5th Cir. 1960).

"Certainly, an attorney cannot render reasonably effective assistance unless he has acquainted himself with the law and facts of the case. See Roberts v. Dutton, 5th Cir. 1966, 368 F. 2d 465; Willis v. Hunter, 10th Cir. 1948, 166 F.2d 721. Our adversary system is designed to serve the ends of justice; it cannot do that unless accused's counsel presents an intelligent and knowledgeable defense. Such a defense requires investigation and preparation."

Caraway v. Beto, 421 F.2d 636, at 637–638 (5th Cir. 1970).

Because there are as many different factual circumstances as there are cases, there are realistically few per se tests, and the determination of ineffectiveness is necessarily a delicate one. However, it should now be axiomatic that

"When a defense counsel fails to investigate his client's only possible defense, although requested to do so by him; and fails to subpoena witnesses in support of the defense, it can hardly be said that the defendant has had the effective assistance of counsel."

Gomez v. Beto, 462 F.2d 596, 597 (5th Cir. 1972).

■ Based on the particular facts of this case, this court concludes that petitioner was denied his constitutional right to counsel at his state trial. His present confinement in the Texas Department of Correction, being pursuant to the conviction obtained in that trial, is unlawful. Therefore his petition for writ of habeas corpus is granted.