In the

# United States Court of Appeals

### For the Seventh Circuit

No. 07-3602

JESSE WATSON,

*Petitioner-Appellant*,

*v.*

KEITH ANGLIN,

*Respondent-Appellee.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 04-2059—**Harold A. Baker**, *Judge*.

ARGUED DECEMBER 12, 2008—DECIDED MARCH 30, 2009

Before CUDAHY, FLAUM, and WOOD, *Circuit Judges.*

CUDAHY, *Circuit Judge.* Jesse Watson, a state inmate in the Danville Correctional Center, is serving an aggregate 60-year sentence for multiple counts of attempted murder, aggravated battery with a firearm and reckless conduct. The district court denied Watson's habeas corpus petition, finding that he was not denied effective assistance of counsel during his criminal trial or his direct appeal. We affirm.

**I.**

Jesse and Pearl Watson married in 1978 and divorced in 1990. On the morning of July 30, 1990, Watson argued with Pearl at the developmental disabilities center in Kankakee, Illinois where they both worked.[1] That same day at about 8:30 in the evening, Watson defied a restraining order by visiting Pearl at her home. He entered the house uninvited and found Pearl in the living room together with her new boyfriend Clifford Nelson, her two daughters from a previous relationship, her daughters' boyfriends and her grandson. After Watson was unable to persuade Pearl to talk with him in private, he announced that it was "party time," drew a gun and opened fire on the gathering. First, he shot Pearl, who had been holding her grandson Antonio on her lap at the time. (Pearl managed to throw Antonio to the ground before the bullet struck her in the stomach and lodged in her spine.) Next, Watson turned his attention to Pearl's boyfriend Nelson, firing on him repeatedly as he attempted to flee and hitting him in both legs and an arm. Watson then opened fire on Pearl's daughter Dormiletha, shooting her in the arm and also hitting her boyfriend Terrence Lindsey in the arm as Lindsey attempted to pull Dormiletha from the path of the gunfire. Finally, Watson walked over to

---

[1] Because Pearl Watson shares the same last name as the petitioner, and her daughters and grandson also share the same last name, we will refer to them by their first names in order to avoid confusion. We will refer to the petitioner himself and his other victims by their last names.

Pearl's side, held his gun to her head and repeatedly pulled the trigger. By then, however, the gun was empty.

Watson was charged with four counts of attempted murder and aggravated battery with a firearm. He rejected the State's plea offer,[2] and a jury convicted him of three counts of attempted murder and three counts of aggravated battery with a firearm—based on the shooting of Pearl, Dormiletha and Nelson—and one count of reckless conduct, based on the shooting of Lindsey. The trial court sentenced Watson to an aggregate sentence of 60 years' imprisonment: 30 years for the battery and attempted murder of Pearl, 15 years for the battery and attempted murder of Dormiletha and 15 years for the battery and attempted murder of Nelson.[3]

After his conviction and sentence became final, Watson commenced a state court collateral challenge, alleging that he was denied effective assistance of counsel in three ways: first, he argued that trial counsel was ineffective for failing to render proper advice con-

---

[2] The parties disagree about what the plea offer was. Watson contends that the State offered a sentence of 20 years' imprisonment in exchange for his guilty plea. The State contends that the offer was 24 years.

[3] Watson was given identical, concurrent sentences for each set of battery and attempted murder charges. The set of sentences for each victim was ordered to run consecutive to the other two. Watson was also given a one-year sentence for the reckless conduct charge, which was ordered to run concurrent to the aggregate 60-year sentence.

cerning the criminal sentence he was facing if he were found guilty at trial; second, he argued that his trial counsel was ineffective for failing to object to the fact that he was charged with attempted murder, but the jury instructions did not define "murder"; and third, he argued that his appellate counsel was ineffective for failing to make an issue of trial counsel's failure to challenge the jury instructions on direct appeal.

The history of the post-conviction proceedings in State court is somewhat tortured and need not be recounted in detail here. What is significant is that the State trial court denied Watson's post-conviction petition on the merits in 2001, and the Appellate Court of Illinois affirmed over one judge's dissent.[4] The Appellate Court found that Watson was not prejudiced by his trial counsel's advice relating to the State's plea offer, noting that Watson had testified only that he would have "considered" pleading guilty if he had been properly advised of his maximum possible sentence. The Appellate Court also appeared to reject Watson's claims based on the jury instructions that were given at his trial.

The district court denied Watson's subsequent federal habeas petition, but granted a certificate of appealability because it took it to be a "closer call" whether Watson's lawyers gave ineffective assistance by failing to challenge the jury instructions.

---

[4] The Supreme Court of Illinois denied leave to appeal.

**II.**

We review the decision of the last state court to address Watson's arguments. *See Williams v. Bartow*, 481 F.3d 492, 497-98 (7th Cir. 2007). Our review is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214. The AEDPA was intended to prevent federal habeas "retrials" and to ensure that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693 (2002). Under the AEDPA, a federal court may grant habeas relief only if the state court's adjudication of a habeas petitioner's constitutional claims was contrary to, or involved an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 376-77 (2000). A state court decision rests on an "unreasonable application" of clearly established federal law if it lies "well outside the boundaries of permissible differences of opinion." *Jackson v. Frank*, 348 F.3d 658, 662 (7th Cir. 2003); *see also Williams*, 529 U.S. at 407-08.

Again, Watson claims that he is entitled to habeas relief because the assistance of counsel he received at trial and on direct appeal was constitutionally defective. The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel. *See Hill v. Lockhart*, 474 U.S. 52, 57 (1985); *Strickland v. Washington*, 466 U.S. 668, 684-85 (1984) ("The Sixth Amendment recognizes the right to the assistance of counsel because it envisions counsel's playing a role that is critical to the

ability of the adversarial system to produce just results. An accused is entitled to be assisted by an attorney, whether retained or appointed, who plays the role necessary to ensure that the trial is fair."). To prevail on an ineffective assistance claim, a petitioner must prove both (1) that his counsel's performance was objectively unreasonable and (2) that he suffered prejudice as a result. *See Strickland*, 466 U.S. at 687; *McDowell v. Kingston*, 497 F.3d 757, 761 (7th Cir. 2007). We may address these issues in whichever order is most expedient. As the Supreme Court explained, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Strickland*, 466 U.S. at 697.

Watson argues that (1) his trial counsel was constitutionally ineffective for failing to convey the information he needed to properly evaluate the State's plea offer, and (2) both trial and appellate counsel were ineffective for failing to make an issue of the fact that he was charged with attempted murder, but the jury instructions that were given at trial did not define "murder."

**A.**

The Appellate Court of Illinois rejected Watson's argument that he was denied effective assistance when his attorney gave him inaccurate advice in connection with the State's plea offer because it found that Watson could not show that he was prejudiced by counsel's advise. We do not think that this finding was unreasonable.

When a defendant considers the government's offer of a plea agreement, "a reasonably competent counsel will attempt to learn all of the facts of the case and to make an estimate of a likely sentence." *United States v. Barnes*, 83 F.3d 934, 939 (7th Cir. 1996) (citing *Hill*, 474 U.S. at 56-60). In the present case, the information Watson's attorney conveyed in connection with the State's plea offer was not altogether accurate. Watson was charged with multiple counts of attempted murder and aggravated battery. These are "Class X" felonies under Illinois law, the highest class of felony. *See* 720 Ill. Comp. Stat. §§ 5/8-4(c)(1), 5/12-4.2(b). Accordingly, Watson faced possible mandatory consecutive sentences if found guilty of multiple crimes, and his maximum possible sentence was 120 years' imprisonment. *See* 730 Ill. Comp. Stat. §§ 5/5-8-2(a)(2), 5/5-8-4(a), 5-8-4(c)(2). It is undisputed that Watson's trial counsel did not advise him of this. Instead, Watson was told that his maximum possible sentence was 60 years' imprisonment.

The Appellate Court of Illinois found that it was objectively unreasonable for counsel to underestimate the possible sentence his client was facing, and we agree. *See Osagiede v. United States*, 543 F.3d 399, 409 (7th Cir. 2008) ("All lawyers that represent criminal defendants are expected to know the laws applicable to their client's defense."). Be that as it may, deficient advice relating to a defendant's possible criminal sentence will violate the defendant's Sixth Amendment rights only if this advice was prejudicial. To show that he was prejudiced during plea bargaining, Watson must show that his counsel's advice was "a *decisive factor*" in his

decision to reject the State's plea offer. *Barnes*, 83 F.3d at 940 (emphasis added).

The Appellate Court found that counsel's advice was not the cause of Watson's decision to reject the plea offer. The court noted that Watson testified in his post-conviction evidentiary hearing that he would have *considered* the State's plea offer if he had been properly advised as to his maximum sentence. The court also noted that Watson's counsel submitted an affidavit stating that Watson was determined to reject any plea offer. Based on this evidence, the court found that Watson's rejection of the plea offer was "based primarily on his belief or hope that the jury would find him guilty of a lesser charge." We must defer to this finding unless it was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); *see also Collier v. Davis*, 301 F.3d 843, 848 (7th Cir. 2002). Based on the evidence presented at the evidentiary hearing, it was reasonable to believe Watson did not reject the plea offer because of counsel's error about the sentence. Therefore, we must defer to the Appellate Court.

**B.**

Watson also argues that his trial and appellate counsel were constitutionally ineffective for failing to challenge the jury instruction for the attempted murder charge. The parties agree that the jury was instructed, *inter alia*, that:

> A person commits the offense of Attempt (First Degree Murder) when he, with intent to commit the offense of First Degree Murder, does any act which constitutes a substantial step toward the commission of the offense of First Degree Murder.[5]

This instruction, while less than pellucid, is not obviously problematic on its face. However, a Committee Note to the Pattern Instructions that were in effect at the time of the trial required the court to "give an instruction that defines the offense that is the alleged subject of [the crime of] attempt." *See* Ill. Pattern Instr.—Crim. Former 6.05 (Committee Note) (2d ed. 1981). Thus, the court was required to instruct the jury that "attempted murder" involves *the intent to kill*; instead, the court instructed the jury that "attempted murder" involves *the intent to commit First Degree Murder*.

We are unpersuaded that this minor discrepancy could have influenced the outcome of the trial. As a threshold matter, it is a close question whether the Appellate Court addressed this issue. What the court said was

> Defendant also claims that on direct appeal he was denied effective assistance of appellate counsel when counsel failed to identify the ineffective assistance of trial counsel for . . . failing to object to improper jury

---

[5] The actual jury instructions were not included in the record on appeal. However, the parties agree that the trial court gave this instruction, which follows Illinois' generic pattern instruction for "attempt" that was in place at the time. *See* Ill. Pattern Instr.—Crim. Former 6.05 (2d ed. 1981).

> instructions. . . . We have weighed the merits of the ineffective assistance of trial counsel issues, which were fully briefed by counsel appointed in these proceedings. We do not believe these issues were so patently meritorious that the failure of the appellate counsel to raise the issue on direct appeal constitutes incompetence.

(Internal quotation marks omitted.) On its face, this remark disposes only of Watson's argument regarding the effectiveness of his appellate counsel. However, the appellate court also stated that it considered Watson's challenge to trial counsel's performance, and it quite clearly implies that it rejects this challenge on the merits. After all, Watson's argument was that his trial counsel's performance was constitutionally deficient: that counsel's failure to object to the jury instructions was objectively unreasonable and it is reasonably likely that the outcome of the trial would have been different but for counsel's errors. If Watson had managed to persuade the court of all this, then the court would have found that Watson had a "patently meritorious" challenge to the jury instructions on direct appeal. Put otherwise, if the argument Watson wanted his appellate counsel to make on direct appeal was not patently meritorious, then Watson quite clearly is not entitled to habeas relief on the basis of this argument. (The situation might be different if Watson's habeas petition were based on newly discovered evidence, and thus the ineffectiveness argument he made in his habeas petition was different from the one he made—or sought to make—on direct appeal. This was not the case here.)

Of course, the court did not give any reason for re-jecting Watson's claims pertaining to his trial counsel. (It hardly gave any reason for rejecting Watson's claims pertaining to his appellate counsel.) But even summary dispositions are entitled to deference under the AEDPA. *See Muth v. Frank*, 412 F.3d 808, 815 (7th Cir. 2005). Here, the court's remarks logically entail that it had rejected all of Watson's claims based on the jury instructions, not just some of them. We must affirm unless we find that this rejection was not within the range of defensible positions. *Mendiola v. Schomig*, 224 F.3d 589, 591-92 (7th Cir. 2000).

Even if there were no state court decision to which we owe deference, however, we would still find that Watson has not shown he was prejudiced by the trial court's failure to define "murder." The mere possibility that an instruction could conceivably be misunder-stood does not render the instruction, or a conviction based on the instruction, unconstitutional. *See Holman v. Gilmore*, 126 F.3d 876, 885 (7th Cir. 1997). Of course, Watson does not argue that the jury instruction standing alone violated his constitutional rights.[6] In principle, a trial error without inherent constitutional significance—such as a minor error in the jury instructions—could con-stitute a violation of clearly established federal law if

---

[6] Watson did make this argument below, and the district court found that he had procedurally defaulted on this claim. He does not challenge this aspect of the district court's deci-sion on appeal.

the error implicates a criminal defendant's Sixth Amendment rights. But again, to show that this has happened, the petitioner must show prejudice. *Strickland,* 466 U.S. at 693 ("It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding."). As a general matter, we imagine that it will be no easier—and may well be a great deal harder—to show that a jury instruction was prejudicial than it would be to show that the substance of the instruction violated the defendant's constitutional rights.

At any rate, under the facts of the present case, we are quite convinced that Watson has not shown that he was prejudiced by the jury instruction. Again, the jury was instructed that "attempted murder" involves the *intent to murder*. Under Illinois law, they should have been instructed that it involves the *intent to kill*. But "murder" is not a legal term of art; it can safely be presumed that the jury understood that murder involves killing. To imagine a jury that would not have understood this is to imagine a jury that is incapable of understanding English.

Moreover, there is some indication that this particular jury understood perfectly well that "murder" involves killing. Although the record does not contain the original charging documents, Watson's post-conviction briefs indicate that he was charged with four counts of attempted murder and was found guilty of three. In the case of Terrence Lindsey—Pearl's daughter Dormiletha's boyfriend—the jury convicted Watson of the lesser charge of reckless conduct. This is not surprising: the

evidence tended to show that Lindsey was shot as he attempted to pull Dormiletha out of Watson's line of fire. In other words, the evidence was that Lindsey was unique among Watson's victims insofar as Watson seems not to have specifically targeted Lindsey. That the jury made distinctions between Watson's victims, returning a guilty verdict for attempted murder only where there was some evidence that Watson specifically intended to kill, is strong evidence that the jury understood that murder involves killing.

There are at least two additional reasons Watson cannot show that he was prejudiced by the jury instructions. First, and notwithstanding Watson's protests to the contrary, the evidence that Watson intended to kill Pearl, Dormiletha and Nelson was considerable. Strong evidence of guilt can undermine a petitioner's claim that he was prejudiced by his attorney's errors. *See Connor v. McBride*, 375 F.3d 643, 665-66 (7th Cir. 2004); *Harding v. Sternes*, 380 F.3d 1034, 1045-46 (7th Cir. 2004). Here, the evidence showed that Watson fired at his victims repeatedly and from a few feet away. Further, while two of Watson's victims were struck in the arm, there was some evidence that this was in spite of Watson's best efforts: Nelson was hit as he was attempting to flee, and Dormiletha was hit as Lindsey was attempting to pull her from Watson's line of fire. The strong evidence of Watson's guilt vitiates his claim that he suffered prejudice as a result of counsel's failure to object to the jury instruction.

A final reason Watson cannot show that he was prejudiced by the jury instructions is that his sentence

would have been exactly the same even without the attempted murder convictions. Watson was convicted of three separate counts of attempted murder and three separate counts of aggravated battery. He was given identical, concurrent sentences for each attempted murder and aggravated battery conviction. That is to say, he was given separate 30-year sentences for his crimes against Pearl, separate 15-year sentences for his crimes against Dormiletha and separate 15-year sentences for his crimes against Nelson. Because Watson was given two identical, concurrent sentences for his crimes against each victim, and because the set of sentences for each victim was ordered to run consecutively, then even if Watson had been acquitted of all attempted murder charges, his aggregate sentence would have been unchanged.

In short, the state court's remarks imply that it reasonably rejected Watson's ineffectiveness claims, including his claim based on his trial counsel's failure to object to the jury instructions. To the extent, however, that any uncertainty remains concerning whether the state court actually resolved this issue, we hold that there is no evidence that Watson was prejudiced by the minor discrepancies in the jury instructions, and considerable evidence that he was not.

### III.

To prove ineffective assistance of counsel, a habeas petitioner must show prejudice. Here, all the evidence indicates that Watson was not prejudiced by either of the

errors that are at issue in this case. The judgment of the district court is

AFFIRMED.