In the

# United States Court of Appeals

## For the Seventh Circuit

No. 08-2354

JAY STARKWEATHER,

*Petitioner-Appellant*,

*v.*

JUDY P. SMITH, WARDEN, OSHKOSH
CORRECTIONAL INSTITUTION,

*Respondent-Appellee.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 07 C 513—**William C. Griesbach**, *Judge.*

ARGUED OCTOBER 22, 2008—DECIDED JULY 23, 2009

Before CUDAHY, MANION, and WILLIAMS, *Circuit Judges.*

CUDAHY, *Circuit Judge.* Jay Starkweather was convicted of one count of first degree murder, four counts of attempted murder and one count of reckless endangerment. After his conviction became final, Starkweather commenced this habeas proceeding, claiming that he had been denied effective assistance of counsel. The district court denied Starkweather's petition. We affirm.

## I. BACKGROUND

### A. Facts

On June 6, 1995, Jay Starkweather set out on a shooting rampage that ended only after he was seriously injured in a gunfight with the police. Starkweather had grown increasingly paranoid, imagining that various acquaintances were conspiring to cheat his family out of his father's land. On the morning of the shootings, Starkweather apparently became convinced that his friend Marty Austreng was part of the conspiracy. The two quarreled, and when the argument escalated Starkweather drew a gun and shot both Austreng and Wayne Kittleson, another friend who had been sitting nearby. Austreng managed to escape, and Starkweather went chasing after him.

Starkweather never managed to find Austreng. In the course of searching for him, Starkweather broke into a neighbor's apartment. The neighbor later testified that Starkweather was carrying a gun in each hand and that he looked "insane." Next, Starkweather went to a trailer owned by Ted Demery. Starkweather's neighbor testified that she heard a single gun shot coming from the direction of Demery's trailer. A sheriff's deputy who had just arrived on the scene also testified that he heard a single shot coming from Demery's trailer.

The police intercepted and exchanged fire with Starkweather at Demery's trailer. After the police shot and injured Starkweather, they entered the trailer and found Demery lying in a pool of fresh blood. Demery had died of a single gunshot to the face at close range. The

gun with which he had been shot was lying at Starkweather's feet. A second gun was found near Starkweather's left hand.

**B. Proceedings Below**

A bifurcated trial was held in Wisconsin in 1996. Starkweather's trial counsel encouraged him not to testify in his own defense during the first phase of the trial—the "guilt phase"—telling him that his testimony would be more appropriate in the second, "responsibility phase." Based on this advice, Starkweather waived his right to testify during phase I, stating that he understood that his right to testify was absolute and that he understood the benefits and costs of exercising this right.

After he was found guilty at the conclusion of phase I of the trial, Starkweather protested that his decision to waive his right to testify during phase I was not fully voluntary, explaining:

> with all due respect to my counsel and the proceedings and everything, I understand [counsel is] doing the best he can, and according to his wishes, I did not testify during the first phase against—it was against my wishes, but I followed his direction . . . There's been a lot of accusations hurled at me back and forth, and I'm willing to stand up and be responsible for what I believe is—for my actions. I am not afraid to do that, but what I'm afraid is I'm going to be shut out of my only chance in court. I'm terrified. I want to be able to know I'm going to be able to stand up and tell my side of the story.

As it happened, Starkweather *was* able to tell his side of the story, but not during the phase of the trial when the jury evaluated his guilt or innocence. During phase II, Starkweather testified that he shot Austreng and Kittleson in self-defense, that he did not kill Demery but instead had discovered him already-dead earlier that morning and that he, Starkweather, was attempting to surrender to the police when he was shot. At the conclusion of phase II, the jury found that Starkweather was mentally ill but not insane, and the court sentenced him to life plus five years.

## II. DISCUSSION

In state court post-conviction proceedings, Starkweather argued (1) that his trial counsel rendered ineffective performance by failing to properly advise him of his right to testify and failing to introduce putatively exculpatory evidence, and (2) that his appellate counsel rendered ineffective performance by failing to challenge the jury instructions that were given at trial.[1] The Wisconsin

---

[1] Starkweather also argues that his appellate counsel was ineffective for failing to challenge trial counsel's performance on direct appeal. Ineffective assistance claims are typically best left for post-conviction challenges, where the petitioner can develop a record. *See Massaro v. United States*, 538 U.S. 500, 504-05 (2003); *United States v. Harris*, 394 F.3d 543, 557 (7th Cir. 2005); *United States v. Khedr*, 343 F.3d 96, 99-100 (2d Cir. 2003). It would be an unusual case indeed where appellate counsel's

(continued...)

Court of Appeals rejected these arguments, and the district court agreed, denying Starkweather's petition for federal habeas relief. We review the decision of the last state court to adjudicate a habeas petitioner's claims. *Watson v. Anglin*, 560 F.3d 687, 690 (7th Cir. 2009). Our review is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214.

Under the AEDPA, a federal court may grant habeas relief only if the state court's adjudication of the petitioner's constitutional claims was based on unreasonable fact-finding or was contrary to, or involved an unreasonable application of, clearly established federal law. 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 376-77 (2000).

Because Starkweather argues that he was denied his Sixth Amendment right to effective assistance of counsel,

---

[1] (...continued)

failure to challenge trial counsel's effectiveness on direct appeal *itself* constituted ineffective assistance.

More significantly, the nature of Starkweather's claims against his appellate counsel is such that—with the exception of one claim, which we discuss separately below—any scenario in which Starkweather would be entitled to habeas relief based on appellate counsel's performance would *a fortiori* be one in which he would also be entitled to relief based on trial counsel's performance. We will not separately analyze Starkweather's redundant claims. It might have been better if Starkweather's post-conviction counsel had taken a more parsimonious view of the issues this case presents; five issues presented are often no better than three.

the relevant federal standard is provided by *Strickland v. Washington*, 466 U.S. 668 (1984), which requires a habeas petitioner to show that (1) counsel's performance was objectively unreasonable and (2) counsel's errors affected the outcome of the proceeding. *Id.* at 688, 694; *Watson*, 560 F.3d at 690. In the present case, the Wisconsin Court of Appeals found that Starkweather failed to satisfy the "performance" prong of the *Strickland* test, that he failed to show that his counsel's performance was objectively unreasonable. To be entitled to habeas relief, Starkweather's burden is high: he must show that the state court's decision lay "well outside the boundaries of permissible differences of opinion." *Hardaway v. Young*, 203 F.3d 757, 762 (7th Cir. 2002); *see also Mendiola v. Schomig*, 224 F.3d 589, 591-92 (7th Cir. 2000) (holding that habeas relief under *Strickland* is inappropriate so long as the state court took the constitutional standard seriously and produced an answer within the range of defensible positions).

**A.  Right to Testify**

Starkweather's most compelling argument is that his trial counsel rendered ineffective assistance by encouraging him to postpone his testimony until after the guilt phase of the trial without advising him of the basis for this advice. In effect, Starkweather argues that his trial counsel's failure to explain *why* he was advising Starkweather to postpone his testimony until after the guilt phase of the trial deprived him of the ability to make a knowing and intelligent choice as to whether to

waive this right. This argument is not wholly without merit.

As a general matter, the right of a criminal defendant to testify in his or her own defense is "one of the rights that are essential to due process of law in a fair adversary process." *Rock v. Arkansas*, 483 U.S. 44, 51 (1987) (internal quotation marks omitted). This right cannot be waived without the defendant's consent. *See United States v. Curtis*, 742 F.2d 1070, 1076 (7th Cir. 1984) (per curiam); *see also United States v. Teague*, 953 F.2d 1525, 1532 (11th Cir. 1992) (en banc). Further, a waiver of a defendant's Sixth Amendment rights must be made voluntarily, knowingly and intelligently. *Brewer v. Williams*, 430 U.S. 387, 404 (1977); *United States v. Moya-Gomez*, 860 F.2d 706, 731 (7th Cir. 1988). Not surprisingly, therefore, a number of cases have held that *incorrect* advice that induces a defendant to waive his right to testify can constitute ineffective assistance. *See Foster v. Delo*, 11 F.3d 1451, 1457 (8th Cir. 1993), *rev'd on other grounds en banc*, 39 F.3d 873 (8th Cir. 1994); *Nichols v. Butler*, 953 F.2d 1550, 1553 (11th Cir. 1992); *United States v. Poe*, 352 F.2d 639, 640 (D.C. Cir. 1965); *see also Santillan v. Beto*, 371 F. Supp. 194, 196 (S.D. Tex. 1974).

Of course, Starkweather has not argued that his counsel's advice was objectively incorrect, nor would such an argument be plausible here. Rather, Starkweather argues that in addition to a negative duty not to mislead, his attorney had an affirmative duty to consult with him on strategic matters. There is at least some support for Starkweather's argument that such an affirmative duty exists. For instance, the American Bar Association's

Rules of Professional Conduct suggest that a lawyer has a duty not only to abide by her client's decision but also to consult with the client about that decision. *See* Model Rules of Prof'l Conduct R. 1.2(a) ("a lawyer shall abide by a client's decisions concerning the objectives of representation and . . . shall consult with the client as to the means by which they are to be pursued."). Further, at least two circuits have stated in dicta that a criminal defense attorney has an affirmative duty to explain the basis for otherwise reasonable strategic recommendations. *See Teague*, 953 F.2d at 1533; *Cannon*, 383 F.3d at 1171. Most notably, the Eleventh Circuit, sitting en banc, has said that,

> Defense counsel bears the primary responsibility for advising the defendant of his right to testify or not to testify, *the strategic implications of each choice . . .* This advice is crucial because there can be no effective waiver of a fundamental constitutional right unless there is an intentional relinquishment or abandonment of a *known* right or privilege.

*Teague*, 953 F.2d at 1533 (internal quotation marks omitted and first emphasis added); *see also Cannon*, 383 F.3d at 1171 ("Counsel should also discuss with the defendant the strategic implications of choosing whether to testify, and should make a recommendation to the defendant.").

In the present case, there appears to be no dispute that Starkweather's counsel did not explain the strategic implications of Starkweather's decision to waive his

right to testify during phase I.[2] It is not hard to imagine why an attorney in Starkweather's counsel's position may have been inclined to be less than fully forthcoming. Knowing that Starkweather wanted to testify that he shot his victims in self-defense and that he was not responsible for Demery's death, a reasonable attorney could have judged that the jury would be more likely to accept his testimony as proof of insanity than it would be to accept this testimony as proof of innocence. Further, had counsel fully informed Starkweather of his reasons for recommending that Starkweather postpone his narrative, there is at least a reasonable possibility that Starkweather would not have agreed to waive his right to address the jury before it decided his guilt. Be that as it may, an attorney's ethical duty to consult with his or her client is no less in situations where the attorney (perhaps reasonably) judges it best to keep his or her

---

[2] The record does not support the suggestion of the concurrence that Starkweather's attorney provided him with "a general explanation of his recommended strategy." Counsel stated that he advised Starkweather that his testimony "would be more appropriate for the responsibility phase." However, there is no evidence that counsel explained that by agreeing to do so Starkweather would forego his opportunity to tell his side of the story before the jury decided his guilt.

Contrary to the suggestion of the concurrence, we do not imply that counsel's explanation should have been delivered in "open court." To the contrary, this information could have been imparted by affidavit or in a post-trial hearing after Starkweather made an issue of his attorney's advice.

client in the dark. *Cf.* Model Rules of Prof'l Conduct
R. 1.2(a).

All that being noted, the Supreme Court has recently
reminded us that "the Constitution does not codify the
ABA's Model Rules." *Montejo v. Louisiana*, No. 07-1529,
2009 WL 1443049, at *8 (U.S. May 26, 2009). Thus, the
question before us is not whether counsel's performance
was ideal, but whether the state court unreasonably
applied clearly established federal law in holding that
counsel's performance was not objectively unreasonable.
We hold that it did not. A right becomes clearly estab-
lished only after a course of decisions establishes how
the Constitution's generalities apply. *Hill v. Wilson*,
519 F.3d 366, 368 (7th Cir. 2008); *see also Holman v.
Gilmore*, 126 F.3d 876, 885 (7th Cir. 1997) ("an argument
for the development of more favorable law necessarily
fails to establish that the state court's decision 'was con-
trary to, or involved an unreasonable application of,
clearly established Federal law . . .'").

Here, the cases on which Starkweather seeks to rely
do not actually establish that the Sixth Amendment
requires an attorney to explain the basis for his or her legal
advice. For instance, in *Poe*, although the D.C. Circuit held
that the defendant's trial was constitutionally defective
because counsel misinformed his client of the consequences
of testifying, the court carefully limited its holding to
situations in which attorneys give *incorrect* advice. *See Poe*,
352 F.2d at 640–41 ("Counsel has chosen to disclose his
reason [for advising his client to waive his right to testify].
*If he had* not *disclosed it . . . neither the District Court nor this*

*court suggests that counsel's decision could have been questioned in any proceeding in any court.*") (emphasis added).

Likewise, neither *Teague* nor *Foster* provides direct support for Starkweather's claim. *Teague* concerned an attorney who never informed her client of his right to testify. 953 F.2d at 1534. The same was true in *Foster*. 11 F.3d at 1457. Unlike the defendants in *Teague* and *Foster*, Starkweather was repeatedly informed of his absolute right to testify both by his own attorney and by the trial judge, and Starkweather stated that he understood the potential costs and benefits of exercising this right. Although Starkweather's attorney perhaps could have done more to ensure that Starkweather's decision to waive his right to testify during phase I was knowing and voluntary, the cases on which Starkweather attempts to rely do not establish that counsel's advice here constitutes a violation of Starkweather's clearly established federal rights.

An additional word about prejudice: the state Circuit Court found that

> considering the other evidence at trial, which would be largely contradictory to the defendant's story, it is unlikely that there is a reasonable probability that by presenting this testimony the jury verdict would have been changed. Therefore, the prejudice prong is not satisfied . . .[3]

---

[3] The Wisconsin Court of Appeals found that trial counsel's performance was not objectively unreasonable, but did not address prejudice. Because the Court of Appeals did not

(continued...)

In the light of the rather overwhelming evidence of Starkweather's guilt, we cannot say that this finding was clearly unreasonable.

## B. Other Ineffective Assistance Claims

Starweather's remaining claims are much less compelling. First, Starkweather argues that his trial counsel was ineffective because he failed to introduce testimony from Starkweather's mother, who claimed to have overheard a police officer state that Demery's blood was not fresh when the police discovered his body.[4] Assuming that Starkweather could overcome the obvious hearsay objection, the Circuit Court found that Starkweather

---

[3] (...continued)

address prejudice, we review the Circuit Court deferentially as the last state court to address the issue. *Watson*, 560 F.3d at 690; *see also Edwards v. Lamarque,* 475 F.3d 1121, 1135 (9th Cir. 2007).

[4] The State argues that Starkweather procedurally defaulted on this claim by presenting, and then abandoning, essentially the same claim in his initial *pro se* post-conviction petition. However, the State waived this defense by opposing Starkweather's two motions to expand the record to rebut the defense, and by providing only expurgated portions of the record. Procedural default is an affirmative defense. *See Gray v. Netherland*, 518 U.S. 152, 165–66 (1996). Because the State appears to have attempted to thwart our review of its procedural default argument, it may not rely on this affirmative defense.

could not possibly have been prejudiced by the trial counsel's failure to introduce this evidence, and we agree.

Starkweather's argument that appellate counsel was ineffective for neglecting to challenge the trial court's failure to give a "lesser included offense" instruction is equally unavailing. Wisconsin law does not require the inclusion of such an instruction unless the evidence provides reasonable grounds both for acquittal of murder and conviction of reckless homicide. *See State v. Wilson*, 440 N.W.2d 534, 542 (Wis. 1989). Here, Demery was shot in the face from close range. Starkweather did not maintain that he shot Demery without malice aforethought; instead, he denied that he was the shooter. Thus, appellate counsel was not ineffective for failing to challenge the trial court's refusal to give a lesser-included-offense instruction.

## III. CONCLUSION

The judgment of the district court is AFFIRMED.

MANION, *Circuit Judge*, concurring.  Under the AEDPA, habeas relief is appropriate only if the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, *as determined by the Supreme Court of the United States*." 28 U.S.C.

§ 2254(d) (emphasis added). Thus, our analysis should focus solely on whether the Supreme Court has clearly established an affirmative duty to explain an otherwise reasonable strategic recommendation. It has not, and thus habeas relief was properly denied. We need not consider, then, dicta from other circuits or the ABA Model Rules in resolving Starkweather's habeas petition. Nor should there be any implication from our decision that Starkweather's attorney violated his ethical duties in representing Starkweather.

In analyzing Starkweather's ineffective assistance claim we also should keep in mind that the explanation we have for his attorney's recommendation against testifying comes from an exchange in open court. Specifically, in open court, Starkweather's attorney stated:

> MR. GRAY: Well, Your Honor, we had a talk this morning. I explained to him my opinion with respect to testifying in this phase of the case. My client has a desire to tell his story; however, it's my opinion, based on my knowledge of the case and experience, that what he has to say would be better fit in the second phase of this trial, if there is a second phase. I advised him as you advised him yesterday that he has a right not to testify. And it's my advice to him not to testify. He told me this morning, and I believe he's going to tell the court now, that he has decided not to testify in this phase of the case, knowing full well that he has an absolute right to testify and that not his lawyer or anybody else in the world could stop him from testifying.

(Tr123:3).

> MR. GRAY: For the record, I advised him at the guilt phase that I believed his testimony, if he wants to testify, which would be against my advice, but his testimony would be more appropriate for the responsibility phase.

This court states that "there appears to be no dispute that Starkweather's counsel did not explain the strategic implications of Starkweather's decision to waive his right to testify during phase I." Opinion at 8-9. But the above excerpt shows that Starkweather's attorney provided Starkweather with at least a general explanation about his recommended strategy. It is unclear from the record whether, in private, Starkweather's attorney further elaborated on his recommendation that Starkweather not testify. But in any event, we should not expect an attorney to provide greater detail on his recommendation against testifying in open court. After all, such further elaboration would likely consist in this case of Starkweather's attorney telling the judge and the prosecutor that he informed his client that no jury would believe his incredible story that he did not shoot Demery and that, if anything, this claim indicated he was not mentally competent. Telling the court instead that "based on my knowledge of the case and experience, that what he has to say would be better fit in the second phase of this trial, if there is a second phase" was more than sufficient.

For these reasons, I concur.