In the

# United States Court of Appeals

## For the Seventh Circuit

No. 09-1230

ANTONIO MCAFEE,

*Petitioner-Appellant,*

*v.*

MICHAEL THURMER,

*Respondent-Appellee.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 06 C 1200—**Rudolph T. Randa,** *Judge.*

ARGUED SEPTEMBER 17, 2009—DECIDED DECEMBER 8, 2009

Before POSNER, MANION, and EVANS, *Circuit Judges*.

EVANS, *Circuit Judge*. The paths of two young people crossed in a Milwaukee alley on a September night in 1996. One was Wendolyn Tanner, the other was Antonio McAfee. Later, a state court judge would observe that the two shared a number of similarities: both were in their late twenties; both were African-American males; both grew up in Milwaukee; both graduated from high school; both served in the military. But that night in 1996, the two men were on different life trajectories: Tanner, 29, was in his

fourth year as a city of Milwaukee police officer, while McAfee, 28, recently finished serving the in-custody portion of a sentence he received for armed robbery. Tanner was shot and killed in the alley that night. McAfee, who a state court jury found responsible for killing Tanner, was convicted of first-degree intentional homicide while armed with a dangerous weapon. He received a sentence of life imprisonment. Today, 13 years after Tanner was put to rest, McAfee is before us appealing the denial of a petition for habeas corpus which asked the federal district court to return his case to state court for a new trial.

McAfee's federal habeas petition rests on a claim that his trial counsel was constitutionally ineffective. That claim was aired and rejected by the state trial judge during postconviction proceedings, and that determination was affirmed by the Wisconsin Court of Appeals in a 2005 opinion marked "Not recommended for publication in the official reports." The Wisconsin Supreme Court declined to review the case. As we mentioned, the federal district court denied McAfee's petition.

Our review is under the Antiterrorism and Effective Death Penalty Act (AEDPA). As directed by AEDPA, we review the decision of the last state court to adjudicate a habeas petitioner's claim. *Starkweather v. Smith*, 574 F.3d 399 (7th Cir. 2009). We may grant relief to a petitioner only if the state court's adjudication of a petitioner's constitutional claim was based on an unreasonable view of the facts or was contrary to, or involved an unreasonable application of, clearly established federal law as

determined by the Supreme Court of the United States. *Williams v. Taylor*, 529 U.S. 362, 376-77 (2000).

Because McAfee argues that he was denied his Sixth Amendment right to the effective assistance of counsel, the relevant standard is a very familiar one: *Strickland v. Washington*, 466 U.S. 668, 688 (1984), requires a habeas petitioner to show that his state trial counsel's performance was objectively unreasonable and that counsel's errors affected the outcome of the proceeding. In other words, McAfee must, under *Strickland*, meet both a performance and a prejudice standard. More on this a little later, as we start our review with the facts.

In federal habeas proceedings, all factual determinations made in state court are presumed to be correct. A petitioner, like McAfee here, can only rebut the presumption of reasonableness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). McAfee has not overcome the presumption, so here are the facts we accept as true.

On the night of September 17, 1996, two Milwaukee police officers, Tanner and Brian Ketterhagen, were on patrol in a squad car on Milwaukee's north side. While investigating drug activity, they tried to detain McAfee in an alley just east of 21st Street, but McAfee fled north. Tanner chased McAfee on foot while Ketterhagen remained in the squad car. As soon as Tanner exited the vehicle, Ketterhagen drove out of the alley and spotted McAfee running across 21st Street with Tanner in pursuit. To keep up with the chase, Ketterhagen drove into another alley on the west side of the street. As he

drove north, he saw McAfee emerge from an opening in a backyard fence and position himself south of the opening to lie in wait for Tanner. As Tanner entered the alley through the opening in the fence, McAfee extended his arms and fired several shots at Tanner, who fell backwards to the ground. Ketterhagen jumped out of the squad car and started shooting at McAfee as he took off running north. Ketterhagen continued firing until he lost sight of McAfee, at which point he ran to his fallen partner and shouted into his radio, "Officer down! Officer down!" Tanner was pronounced dead at the scene.

Soon more police arrived until as many as 90 officers were at the scene. Ketterhagen didn't know if any of the bullets he fired hit McAfee, but police soon discovered a trail of blood, which led them to a house on 22nd Street, the home of McAfee's aunt. Upon searching the house, police found McAfee with his gun, hiding in a closet.

Later it was determined that Tanner suffered three gunshot wounds. The fatal shot entered Tanner's right side, passed through his heart and lungs, and exited the left side of his body, severing his aorta. However, the source of the bullet was not identified. Another "potentially fatal" shot severed Tanner's spinal cord, and the bullet lodged behind his right clavicle. It was recovered from Tanner's body and traced to the gun McAfee had with him in the closet when he was apprehended. The third shot passed through Tanner's left arm and was deemed to be a flesh wound.

At trial, McAfee's attorney argued that Ketterhagen—not McAfee—fired the fatal bullet and that the police

falsified testimony to cover up the truth. But the state court jury didn't believe this "friendly fire/police cover-up" theory and found McAfee guilty of first-degree intentional homicide. McAfee claims that his lawyer was constitutionally ineffective because she relied on a "doomed" defense of "friendly fire" and failed to strenuously argue for conviction only on the lesser-included offense of first-degree reckless homicide.[1] However, counsel "need not be perfect, indeed not even very good, to be constitutionally adequate." *Dean v. Young*, 777 F.2d 1239, 1245 (7th Cir. 1985). As we noted, *Strickland* has two prongs, both of which must be satisfied to succeed on an ineffectiveness claim. A defendant must show that his attorney performed below minimal professional standards and that the substandard performance prejudiced him. *Strickland*, 466 U.S. at 687. Under AEDPA, establishing that a state court's application of the *Strickland* standard was "unreasonable" is a tall task, and "only a clear error in applying *Strickland* will support a writ of habeas corpus." *Allen v. Chandler*, 555

---

[1] Under Wisconsin law whoever causes the death of another human being with intent to kill that person or another is guilty of first-degree intentional homicide. Wis. Stat. Ann. § 940.01(1). Whoever recklessly causes the death of another human being under circumstances which show utter disregard for human life is guilty of first-degree reckless homicide. Wis. Stat. Ann. § 940.02(1). First-degree reckless homicide is a lesser-included offense of first-degree intentional homicide. The parties stipulated to submitting the lesser-included offense option to the jury.

F.3d 596, 600 (7th Cir. 2009). McAfee argues that the Wisconsin Court of Appeals unreasonably applied the *Strickland* standard in rejecting his claim of ineffective assistance of counsel. We disagree.

With respect to *Strickland*'s performance prong, McAfee must overcome the strong presumption that counsel's conduct was reasonable and that the "challenged action 'might be considered sound trial strategy.'" 466 U.S. at 689, 104 S. Ct. 2052, quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S. Ct. 158 (1955). Strategic choices are "virtually unchallengeable." *Id*. at 690. The record in this case supports but one conclusion: the decision to go with the "friendly fire" defense was strategic. McAfee's counsel was a seasoned defense attorney with experience in trying first-degree intentional homicide cases, including ones where a lesser-included charge of reckless homicide was submitted to the jury. She spent many hours developing her trial strategy, and McAfee was on board with it.

In hindsight, it might well have been better to urge the jury to convict on the lesser-included offense, rather than go for broke by seeking an acquittal on the more serious charge. But we do not second-guess an attorney's performance with the benefit of hindsight. Instead, as *Strickland* dictates, we make "every effort . . . to evaluate the conduct from counsel's perspective at the time." *Id*. at 689. When we put ourselves in the shoes of McAfee's trial counsel, going for broke was not an unreasonable strategy. As the Wisconsin Court of Appeals noted, Ketterhagen was the sole eyewitness; McAfee

admitted to firing his gun but not to actually shooting Tanner; and the source of the fatal bullet was not identified. Therefore, seeking acquittal fell well within the "wide range of professionally competent assistance." *Id*. at 690. Plus, the "friendly fire" defense might well have swayed a few jurors and forced a compromise verdict—not guilty of intentional homicide but guilty on the lesser-included offense.

At the postconviction hearing on McAfee's Sixth Amendment claim, his attorney testified that upon reflection, she should have used a "more general approach" and addressed both "friendly fire" and reckless homicide. But again, this kind of reflection after the fact is irrelevant to the question of ineffective assistance of counsel. Moreover, the State argued that McAfee's lawyer appeared to be falling on her sword for the sake of her client. The Wisconsin trial judge agreed. He found her testimony of "limited usefulness to the Court" as she testified "in a manner which appeared to be calculated to aid the defendant." The judge thought the attorney conceded error in hopes of securing a new trial for her former client. As a result, her testimony that she was "rattled" and had made an "overzealous probably inappropriate indictment of a police officer" did not seem all that believable. The state judge found that trial counsel's performance was not constitutionally ineffective.

Even if we could find deficient performance, we could not find prejudice. To establish prejudice, McAfee must show that there is a reasonable probability that the

result of the trial would have been different but for counsel's shortcomings. A reasonable probability is a probability sufficient to undermine confidence in the outcome. McAfee's claim fails this prong, too. The State's case against McAfee was overwhelming. He ran from the police. He fired his gun at the officers numerous times. At least one of his bullets hit Tanner. And after the shootout, police found him hiding in a closet with the gun. Given the facts established at trial, we can't see how a jury would have given McAfee a pass. Perhaps this was the kind of case—yes, there are some—where there simply is no viable defense. While we respect McAfee's right to remain silent at trial, without hearing his side of the story about what happened in that Milwaukee alley 13 years ago, the jury probably had little choice but to convict him of first-degree intentional homicide for killing officer Tanner.

Accordingly, we AFFIRM the denial of McAfee's habeas petition.