# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

KENNETH LOVELL MONTGOMERY, JR.,

       Defendant-Appellant.

UNPUBLISHED
September 15, 2015

No. 319278
Genesee Circuit Court
LC No. 13-033120-FC

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

QUADRELL MARQUON MONTGOMERY,

       Defendant-Appellant.

No. 319393
Genesee Circuit Court
LC No. 12-031854-FC

Before: GADOLA, P.J., and JANSEN and BECKERING, JJ.

PER CURIAM.

Defendants Kenneth Montgomery, Jr. (Kenneth), and Quadrell Montgomery (Quadrell) were jointly tried, before separate juries. Both defendants were convicted of felon in possession of a firearm, MCL 750.224f, discharging a firearm at a building, MCL 750.234b, and possession of a firearm during the commission of a felony, MCL 750.227b. Kenneth was also convicted of assault with intent to commit murder, MCL 750.83, and carrying a concealed weapon (CCW), MCL 750.227, and Quadrell was also convicted of assault with intent to do great bodily harm less than murder, MCL 750.84. The trial court sentenced Quadrell as a third habitual offender, MCL 769.11, to concurrent prison terms of 9-1/2 to 20 years for the assault with intent to do great bodily harm conviction, 6 to 10 years for the felon-in-possession conviction, and five to eight years for the discharging of a firearm conviction, to be served consecutive to a two-year term of imprisonment for the felony-firearm conviction. The court sentenced Kenneth as a second habitual offender, MCL 769.10, to concurrent prison terms of 25 to 40 years for the assault with intent to commit murder conviction, 47 to 90 months each for the felon-in-possession and CCW convictions, and 2-1/2 to 6 years for the discharging of a firearm

-1-

conviction, to be served consecutive to a two-year term of imprisonment for the felony-firearm conviction. Both defendants appeal as of right. We affirm in both appeals.

## I. BACKGROUND

Defendants' convictions arise from a neighborhood shooting during the early morning hours of September 29, 2012, into the home of Theopholis and Lelia Poindexter in Flint. The home was then occupied by nine family members, some of whom had come to the home to assist the Poindexters' son, Derrick, who was assaulted earlier in the evening following an argument with his live-together partner, Crystal Montgomery (Crystal), who is defendant Quadrell Montgomery's mother. According to Crystal, Derrick pushed her during the argument, following which she heard someone say "You hit my auntie," and then saw Derrick being assaulted. Afterward, Crystal drove Derrick to his parents' home, where Derrick's brother, Darryl, helped him into the house. Crystal then left.

But Crystal's son, Quadrell, later appeared at the Poindexters' home. Both Derrick and one of his three sisters refused Quadrell's request to speak with Derrick. Quadrell then left the house, but returned a short time later. According to Darryl, three vehicles appeared in front of the house, and he saw both Quadrell and Kenneth walking toward the house with guns. Darryl obtained his own gun and asked his nephew to join him outside, but Darryl was pulled into the house by one of his sisters. Darryl and another sister phoned 911 to request the police. Gunshots were fired into the house, and Quadrell and Kenneth were both gone by the time the police arrived.

Quadrell was the only defendant to testify at trial. Quadrell admitted that he went to the Poindexters' home to look for Derrick, but claimed that he was only looking for items that had been placed in Crystal's van earlier in the day when Derrick was helping him move to a new residence. Quadrell denied that he returned to the Poindexters' home.

Each defendant was charged in an information that was amended before trial to include a charge of assaulting one or more of the occupants of the Poindexters' home, with the intent to commit murder, along with other weapons charges. Defendants stipulated at trial that they were convicted felons and ineligible to possess a firearm on September 29, 2012. They were convicted as charged, with the exception that Quadrell was convicted of the lesser assault offense of assault with intent to do great bodily harm less than murder, and found not guilty of CCW.

## II. DOCKET NO. 319278 (KENNETH MONTGOMERY)

### A. PROSECUTORIAL MISCONDUCT

Kenneth argues that a new trial is required because the prosecutor made improper remarks in closing argument regarding his failure to testify, which denied him a fair trial. Because Kenneth did not object to the prosecutor's remarks at trial, this issue is unpreserved and our review is limited to plain error affecting his substantial rights. *People v Vaughn,* 491 Mich 642, 663-664; 821 NW2d 288 (2012); *People v Carines,* 460 Mich 750, 763-764; 597 NW2d 130 (1999); see also *People v Fyda,* 288 Mich App 446, 460; 793 NW2d 712 (2010).

An appellate court reviews claims of prosecutorial misconduct on a case-by-case basis to determine whether the defendant was denied a fair and impartial trial. *Id.* at 460. We must evaluate the prosecutor's remarks in context. *People v Dobek,* 274 Mich App 58, 64; 732 NW2d 546 (2007). A prosecutor is not permitted to comment on a defendant's silence at trial. *Griffin v California,* 380 US 609, 615; 85 S Ct 1229; 14 L Ed 2d 106 (1965). But the prohibition upon such comment extends no farther than the reach of a defendant's Fifth Amendment right not to testify. *People v Fields,* 450 Mich 94, 109; 538 NW2d 356 (1995).

The challenged remarks were made in the context of an argument that Kenneth could be found guilty of the assault charge under an aiding and abetting theory, notwithstanding some inconsistencies in testimony. The prosecutor remarked that Darryl had always been consistent with respect to his claim that the persons he saw with guns on the driveway were Quadrell and Kenneth. The prosecutor interrupted his comments regarding Quadrell's testimony to state "before I forget," and then commented on the lack of evidence that Kenneth was not there. We conclude that the prosecutor's argument did not infringe on Kenneth's right to remain silent.

A prosecutor does not infringe on a defendant's right to remain silent at trial by commenting that certain inculpatory evidence is undisputed. *People v Callon,* 256 Mich App 312, 331; 662 NW2d 501 (2003); *People v Perry,* 218 Mich App 520, 538; 554 NW2d 362 (1996), aff'd 460 Mich 55 (1999); see also *Fyda,* 288 Mich App at 464. The prosecutor may observe that the evidence against a defendant is uncontroverted or undisputed, even if the defendant is the only person who could have contradicted the evidence. *Fields,* 450 Mich at 115.

It is clear from the record that the prosecutor only had Darryl's testimony to establish that Kenneth was one of the men with a gun on the driveway at the Poindexter home. Had the prosecutor commented that there was "no evidence in this record" and "no one says" that a gunman was not Kenneth when addressing Darryl's testimony or his credibility, it might be easier to conclude that the prosecutor was making a proper comment on the weight to be given to Darryl's testimony or his veracity. But it is not apparent that the prosecutor was commenting on Kenneth's failure to testify, directly or indirectly, by making the "before I forget" comment regarding the lack of evidence that Kenneth was not at the Poindexter home. The prosecutor's focus was on the evidence of record, and not on whether Kenneth should have presented contradictory evidence by testifying or otherwise. Moreover, it is not apparent that the prosecutor's comment was manifestly intended to be, or was of such a character, that the jury would naturally and necessarily take it as a comment on Kenneth's failure to testify. *People v Guenther,* 188 Mich App 174, 179; 469 NW2d 59 (1991). Although the jury asked questions during deliberations regarding the lack of alibi evidence for Kenneth, we disagree with Kenneth's position that there is a link between the questions and the prosecutor's challenged remarks. Accordingly, Kenneth has not met his burden of establishing a plain error.

## B. FLIGHT INSTRUCTION

Kenneth next argues that the trial court erred in granting the prosecutor's request for an instruction on flight. Although jury instructions that involve questions of law are reviewed de novo, a trial court's determination that a jury instruction applies to the facts of the case is reviewed for an abuse of discretion. *People v Gillis,* 474 Mich 105, 113; 712 NW2d 419 (2006).

A trial court abuses its discretion by choosing an outcome outside the range of reasonable and principled outcomes. *People v Guajardo,* 300 Mich App 26, 34; 832 NW2d 409 (2013).

Evidence of flight is generally admissible in Michigan because it may indicate a consciousness of guilt. *People v Coleman,* 210 Mich App 1, 4; 532 NW2d 885 (1995). It includes such actions as "fleeing from the scene of the crime, leaving the jurisdiction, running from the police, resisting arrest, and attempting to escape custody." *Id.* It does not require proof that the defendant was motivated by a fear of apprehension. *People v Smelley,* 485 Mich 1023; 776 NW2d 310 (2010). "It is always for the jury to determine whether evidence of flight occurred under such circumstances as to indicate guilt." *People v Unger,* 278 Mich App 210, 226; 749 NW2d 272 (2008). An appropriate flight instruction will present both the prosecutor's theory of guilt and the defendant's theory that there is an innocent reason for the flight. *People v Taylor,* 195 Mich App 57, 63-64; 489 NW2d 99 (1992).

The trial court granted a flight instruction with respect to both defendants based on evidence that they fled from the scene of the shooting. Kenneth's jury was instructed that a person may run or hide for innocent reasons, but that a person may also run because of a consciousness of guilt. Considering Darryl's testimony regarding the arrival of defendants at the Poindexters' home in vehicles, his observation of defendants holding guns outside before he was pulled into the house and heard gunshots, and the evidence that defendants were gone by the time the police arrived, the trial court did not abuse its discretion in granting the prosecutor's request for the flight instruction.

## C. SENTENCING

Kenneth argues that the trial court erred in assessing 10 points for offense variable (OV) 4, MCL 777.34, of the sentencing guidelines. The statute directs a trial court to assess 10 points for OV 4 where "[s]erious psychological injury requiring professional treatment occurred to a victim." MCL 777.34(1)(a). The trial court relied on a victim's statements at codefendant Quadrell's sentencing regarding the emotional trauma she experienced because of the offense to find that a 10-point score was justified for OV 4. At sentencing, Kenneth's counsel did not challenge the trial court's entitlement to rely on the victim's statement from Quadrell's sentencing, but rather argued that the statement did not establish that the victim's psychological injury required professional treatment. Kenneth now argues on appeal that it was improper for the trial court to rely on a statement offered at Quadrell's sentencing to score 10 points for OV 4 at Kenneth's sentencing.

Ordinarily, we review the trial court's factual determinations when scoring the sentencing guidelines for clear error, and review de novo the trial court's determination whether the facts as found satisfy the scoring conditions prescribed by the statute. *People v Hardy,* 494 Mich 430, 438; 835 NW2d 340 (2013). But because Kenneth did not object to the trial court's scoring of OV 4 on the same ground asserted on appeal, this scoring challenge is unpreserved. *People v Kimble,* 470 Mich 305, 309; 684 NW2d 669 (2004) (an objection to the scoring of a guidelines variable on one ground is insufficient to preserve an appellate attack on a different ground). Therefore, we review the issue for plain error affecting Kenneth's substantial rights. *Id.* at 312; *People v Hershey,* 303 Mich App 330, 348; 844 NW2d 127 (2013).

The Michigan Rules of Evidence do not apply to a sentencing proceeding. MRE 1101(b)(3); *People v Matzke,* 303 Mich App 281, 284; 842 NW2d 557 (2013). When scoring the guidelines, a court may consider all record evidence, including the presentence investigation report, a defendant's admissions at a plea proceeding, and testimony taken at a preliminary examination or trial. *People v Johnson,* 298 Mich App 128, 131; 826 NW2d 170 (2012). A victim's impact statement is also an appropriate consideration. *People v Williams,* 298 Mich App 121, 124; 825 NW2d 671 (2012). In addition, a court may generally take judicial notice of the files and records of the court in which he or she sits. *Knowlton v City of Port Huron,* 355 Mich 448, 452; 94 NW2d 824 (1959); see also *People v Sinclair,* 387 Mich 91, 103; 194 NW2d 878 (1972) (opinion of SWAINSON, J.).

In determining whether a victim has sustained a serious psychological injury requiring professional treatment, "the fact that treatment has not been sought is not conclusive." MCL 777.34(2). A court may not simply assume that someone in a victim's position would have suffered psychological harm, but rather must find some evidence of psychological injury on the record. *People v Lockett,* 295 Mich App 165, 183; 814 NW2d 295 (2012). A score of 10 points is proper where "the victim suffers, among other possible psychological effects, personality changes, anger, fright, or feelings of being hurt, unsafe or violated." *People v Armstrong,* 305 Mich App 230, 247; 851 NW2d 856 (2014).

At Quadrell's sentencing, one of the occupants of the Poindexters' home discussed the ongoing impact of the shooting incident on her mental state. She stated that she was "traumatized" by the shooting episode, and explained that she cannot get rid of the feelings that she gets whenever she thinks about what happened. Although she expressed that a doctor could not help her, this is not dispositive of whether a score of 10 points for OV 4 was appropriate. See *Armstrong,* 305 Mich App at 247-248 (a score of 10 points was proper even though the victim of a sexual assault testified that she did not want counseling). The victim's statements about being traumatized by the gunshots and her inability to get "rid of that" when she thinks about what happened supports the 10-point score for OV 4. Furthermore, because both defendants were convicted on the basis of the same evidence at trial, there was no plain error in the trial court's consideration of that evidence at Kenneth's sentencing.

Kenneth also argues that, regardless of whether OV 4 was properly scored, the trial court committed plain error by relying on incorrect guidelines ranges for the felon-in-possession, CCW, and discharge of a firearm convictions. It appears from the record that the trial court failed to adjust the guidelines ranges for the lesser-crime-class convictions after making corrections to the scoring of various guidelines variables. However, the court relied on the correct guidelines range for assault with intent to commit murder, which as a class A offense, 777.16d, was the highest class offense. Because the sentences for the other three convictions are to be served concurrently, the trial court did not have a statutory duty to compute guidelines ranges for them. *People v Lopez,* 305 Mich App 686, 690-692; 854 NW2d 205 (2014); *People v Mack,* 265 Mich App 122, 127-129; 695 NW2d 342 (2005); see also MCL 771.14(2)(e). Under these circumstances, resentencing is not warranted on the basis of this unpreserved issue. Any error will not affect Kenneth's total length of imprisonment allowed by law, which is established by his sentence for assault with intent to commit murder. Cf. *Kimble,* 470 Mich at 312-313 (resentencing warranted where a plain scoring error will result in a person being sentenced to prison for longer than allowed by law).

D.  KENNETH'S STANDARD 4 BRIEF

In a pro se supplemental brief, filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4, Kenneth raises two claims of ineffective assistance of counsel, neither of which have merit.

Kenneth failed to raise these ineffective assistance of counsel claims in a motion for a new trial or request for a *Ginther*[1] hearing in the trial court.  Further, this Court previously denied Kenneth's motion to remand for a *Ginther* hearing for failure to properly support the motion with an affidavit or other appropriate offer of proof.  *People v Montgomery,* unpublished order of the Court of Appeals, entered October 10, 2014 (Docket No. 319278).  Because Kenneth has not set forth any additional facts that require factual development to determine if counsel was ineffective, we again deny Kenneth's request for a remand.  MCR 7.211(C)(1)(a); *People v Chapo,* 283 Mich App 360, 369; 770 NW2d 68 (2009); *People v Williams,* 275 Mich App 194, 200; 737 NW2d 797 (2007).  Accordingly, our review of Kenneth's claims is limited to errors apparent from the record.  *People v Horn,* 279 Mich App 31, 38; 755 NW2d 212 (2008); *People v Davis,* 250 Mich App 357, 368; 649 NW2d 94 (2002).

Ineffective assistance of counsel is a mixed question of fact and constitutional law. *People v LeBlanc,* 465 Mich 575, 579; 640 NW2d 246 (2002).  To establish ineffective assistance of counsel, Kenneth must establish that defense counsel's performance fell below an objective standard of reasonableness and resulting prejudice.  *Vaughn,* 491 Mich at 669.  To establish prejudice, Kenneth must demonstrate a reasonable probability that, but for counsel's error, the result of the proceeding would have been different.  *Id.*; *People v Carbin,* 463 Mich 590, 599-600; 623 NW2d 884 (2001).

Relying on remarks made by his defense counsel at sentencing, Kenneth first argues that defense counsel was ineffective for not moving for a mistrial or requesting a cautionary instruction during the jury's deliberations, on the basis that the jury was hopelessly deadlocked. Kenneth argues that counsel essentially admitted at sentencing that his performance was deficient and prejudicial.  Because the inquiry into counsel's performance is an objective one, *Vaughn,* 491 Mich at 670, it is immaterial whether defense counsel believed that his performance was deficient or prejudicial.  See *Ebert v Gaetz,* 610 F3d 404, 415 (CA 7, 2010) (it was of no moment that the court failed to give weight to an attorney's assessment of his own performance); *McAfee v Thurmer,* 589 F3d 353, 356 (CA 7, 2009) (attorney's after-the-fact reflection of her performance was irrelevant to the question of ineffective assistance of counsel).  This is especially so in this case where, examined in context, the record of the sentencing hearing reflects that defense counsel was making a hindsight evaluation of his performance to support his overall allocation and argument that the trial court should make a downward departure from the guidelines.

In addition, after reviewing the trial record, we find no support for Kenneth's argument that counsel's failure to move for a mistrial during the jury's October 9, 2013 deliberations was

---

[1] *People v Ginther,* 390 Mich 436; 212 NW2d 922 (1973).

objectively unreasonable. Although a mistrial may be ordered when a jury is deadlocked, *People v Lett,* 466 Mich 206, 229-230; 644 NW2d 743 (2002), the trial court had already indicated on the record that "I'm not going to hang them yet." Thus, defense counsel's failure to move for a mistrial did not constitute ineffective assistance. Counsel need not make futile motions. *Horn,* 279 Mich App at 42 n 5. In addition, considering that the trial court gave a deadlocked jury instruction on October 9, 2013, and answered multiple jury questions over the next two days of deliberations, we find no record support for Kenneth's claim that counsel was ineffective for not requesting a cautionary instruction. Kenneth has not established any basis for a new trial on this ground.

Kenneth also argues that defense counsel was ineffective by failing to investigate or contact potential alibi witnesses. This claim fails because there no record evidence of the potential alibi testimony or the extent of any investigation conducted by counsel regarding the potential witnesses. *Carbin,* 463 Mich at 601; *People v Kelly,* 186 Mich App 524, 527; 465 NW2d 569 (1990). And absent an appropriate offer of proof regarding any potential alibi testimony, Kenneth has failed to establish that remand for further proceedings regarding this claim is warranted. MCR 7.211(C)(1)(a); *Chapo,* 283 Mich App at 369; *Williams,* 275 Mich App at 200.

Lastly, the record does not support Kenneth's argument that defense counsel was ineffective by not cross-examining Quadrell at trial. The record reflects that defense counsel represented in a pretrial motion for separate trials that he had information that Quadrell might testify at trial that he saw Kenneth walking up to the Poindexters' home minutes before the shooting. At trial, Quadrell ultimately testified on direct examination that he had no contact with Kenneth on September 29, 2012. The trial court thereafter denied a request by Kenneth's counsel, outside the presence of the jury, to reserve his cross-examination. In addition, the prosecutor indicated that he would not refer to the earlier motion for separate trials or statements contained therein during his cross-examination of Quadrell.

When reviewing counsel's performance, a court must affirmatively entertain the range of possible reasons for counsel's actions. *Vaughn,* 491 Mich at 670. Considering the record evidence that defense counsel had reasonable concerns that Quadrell might provide inculpatory testimony against Kenneth, and that Quadrell failed to do so when questioned by his own counsel, it was sound trial strategy for Kenneth's counsel not to cross-examine Quadrell. Doing so risked the possibility that Quadrell might offer testimony harmful to Kenneth. Therefore, we find no basis for relief with respect to this claim.

### III. DOCKET NO. 319393 (QUADRELL MONTGOMERY)

#### A. INEFFECTIVE ASSISTANCE OF COUNSEL

Quadrell argues that he was denied the effective assistance of counsel in connection with his pretrial decision to withdraw a no contest plea to a reduced charge of felonious assault,

-7-

pursuant to an agreement with the prosecutor that was also accompanied by a preliminary *Cobbs*[2] evaluation by the trial court that Quadrell would receive only a six-month sentence for that conviction, plus two years for felony-firearm. The trial court addressed and decided this issue after conducting a *Ginther* hearing. We review the trial court's factual findings for clear error, but review the court's application of the facts to the constitutional standards for evaluating an ineffective assistance of counsel claim de novo. *LeBlanc,* 465 Mich at 579.

A defendant is entitled to the effective assistance of counsel in the pretrial plea-bargaining process. *People v Douglas,* 496 Mich 557, 591-592; 852 NW2d 587 (2014). Where the issue involves the defendant's decision to tender a plea, the relevant inquiry is whether the plea was voluntarily and understandingly made. *People v White,* 307 Mich App 425, 431; 862 NW2d 1 (2014). "Guilty pleas have been found to be involuntary or unknowing on the basis of ineffective assistance of counsel where defense counsel failed to explain the nature of the charges or the consequences of the guilty plea," because this deprives the defendant of the ability to make an intelligent and informed decision. *People v Corteway,* 212 Mich App 442, 445; 538 NW2d 60 (1995). It is equally essential that defense counsel advise a defendant of possible consequences of the withdrawal of a plea. *Beckham v Wainwright,* 639 F2d 262, 267 (CA 5, 1981). But absent evidence that defense counsel gave incorrect advice or failed to provide material advice, a defendant cannot establish deficient performance. *Burt v Titlow,* 571 US___; 134 S Ct 10, 17; 187 L Ed 2d 348 (2013).

A defendant must also show prejudice resulting from counsel's ineffective advice concerning a plea proceeding. *Douglas,* 496 Mich at 592. Where the alleged prejudice is that the defendant rejected a plea and stood trial, the defendant must show a reasonable probability that the plea would have been accepted and that the prosecutor would not have withdrawn it in light of intervening circumstances. *Id.* at 592; citing *Lafler v Cooper,* ___ US ___ ; 132 S Ct 1376, 1385; 182 L Ed 2d 398 (2012).

Pursuant to *Cobbs,* 443 Mich at 283, the trial court may, at the request of a party, make a preliminary evaluation on the record of "the length of the sentence that, on the basis of the information then available to the judge, appears to be appropriate for the charged offense." The trial court may also make a preliminary evaluation of a reduced charge offered by the prosecutor to the defendant in exchange for a plea. *Id.* at 283 n 5. The preliminary evaluation does not bind the trial court's sentencing discretion because additional facts may emerge during later proceedings. *Id.* at 283. But a defendant tendering a plea based on the preliminary evaluation has a right to withdraw the plea if the trial court later determines that the sentence must exceed the preliminary evaluation. *Id.* As set forth in MCR 6.310(B)(2)(b), if "the plea involves a statement by the court that it will sentence to a specified term or within a specified range, and the court states that it is unable to sentence as stated; the trial court shall provide the defendant the opportunity to affirm or withdraw the plea, but shall not state the sentence it intends to impose."

Contrary to Quadrell's argument on appeal, the record demonstrates that his counsel adequately explained the parameters of a *Cobbs* evaluation to him. This is established by the

---

[2] *People v Cobbs,* 443 Mich 276; 505 NW2d 208 (1993).

record of the plea hearing itself. It reflects that the trial court gave defense counsel a written statement of its preliminary evaluation of the sentence and that defense counsel then explained the document to Quadrell by advising him that he would have the right to withdraw the plea if the trial court is unable to impose the specified sentence after it reviews the presentence investigation report. And while Quadrell may have concluded that there was a binding agreement, Quadrell, at most, established at the *Ginther* hearing only that he had a subjective belief that he could appeal and have the *Cobbs* sentence reinstated if he withdrew the plea and was convicted at trial. The *Cobbs* evaluation itself contained only an irrevocable promise that Quadrell could withdraw the plea. The trial court did not err in concluding, following the *Ginther* hearing, that Quadrell's beliefs were inadequate to establish ineffective assistance. Defense counsel can only provide information. *People v Jackson*, 203 Mich App 607, 614; 513 NW2d 206 (1994). Counsel cannot ensure the defendant's comprehension. *Id.*

Quadrell also argues that counsel's performance was deficient because counsel failed to give any advice at all after the trial court required him to make a choice between going to trial or accepting a minimum sentence that was eight months longer than the preliminary *Cobbs* evaluation. Quadrell's argument is inconsistent with both the affidavit that he filed in support of his claim that he was denied the effective assistance of counsel and his testimony at the *Ginther* hearing that he was told by defense counsel before he responded to the trial court's request for a decision that he could appeal the trial court's decision not to impose the *Cobbs* sentence. In his affidavit, Quadrell averred that "[d]uring that short moment, my lawyer indicated that I could appeal the judge's decision not to sentence me in accordance with the original sentence evaluation and have the evaluation enforced by the court of appeals."

We further note that, while defense counsel also indicated at the *Ginther* hearing that he believed there was some discussion, he denied telling Quadrell that he could go to trial and, if he lost at trial, win an appeal to enforce a *Cobbs* sentence. We defer to the trial court with respect to issues dependent on the credibility of witnesses. *People v Sexton (After Remand)*, 461 Mich 746, 752; 609 NW2d 822 (2000). To the extent that the trial court addressed this conflicting testimony by finding that it could not decide who to believe, Quadrell's claim must fail because where a party has a burden of proof on an issue and the evidence is so evenly balanced as to leave the question in doubt, the burden of proof is not satisfied. See *Reagan v Murray*, 176 Mich 231, 237; 142 NW 545 (1913).

We note, however, that the video recording of the sentencing hearing at which Quadrell withdrew his plea does not reflect that there was an opportunity for him to have an off-the-record discussion with defense counsel before he responded to the trial court by withdrawing the plea. But the video recording does not reflect that Quadrell did not understand what was happening or needed to consult with defense counsel before making the choice presented to him by the trial court. Rather, it depicts Quadrell responding without hesitation to the trial court. It is consistent with defense counsel's testimony at the *Ginther* hearing that Quadrell was unwilling to accept any minimum sentence of more than the two years and six months, as indicated in the *Cobbs* evaluation.

The only error evident from the record is that the trial court informed Quadrell of its intended sentence of two years, plus 14 months, before giving Quadrell an opportunity to withdraw the plea. Pursuant to MCR 6.310(B)(2)(b), the trial court should have offered Quadrell

an opportunity to withdraw the plea without stating the sentence it intended to impose. But regardless of whether Quadrell had a discussion with defense counsel during the short moment before he responded to the choices presented to him by the trial court, the trial court did not err in finding that Quadrell failed to establish ineffective assistance of counsel, because Quadrell failed to demonstrate that defense counsel gave incorrect advice or failed to provide material advice regarding the consequences of a trial court's *Cobbs* evaluation of a sentence. The material fact that Quadrell would be allowed to withdraw the plea was made known to Quadrell.

## B. FLIGHT INSTRUCTION

Quadrell also argues that the trial court erred in granting the prosecutor's request for an instruction on flight. We previously addressed this issue with respect to the flight instruction given to Kenneth's jury. The same evidence supports the flight instruction for Quadrell's jury. Accordingly, the trial court did not abuse its discretion in granting the prosecutor's request for the flight instruction.

## C. PROSECUTORIAL MISCONDUCT

Quadrell also argues that the prosecutor engaged in misconduct when cross-examining two witnesses. Because Quadrell failed to object to the prosecutor's cross-examination, this issue is unpreserved and Quadrell bears the burden of establishing a plain error affecting his substantial rights. *Vaughn,* 491 Mich at 663-664; *Carines,* 460 Mich at 763.

Quadrell's challenges to the prosecutor's cross-examination of witnesses are more appropriately treated as claims of evidentiary error framed as misconduct. *Dobek,* 274 Mich App at 70. A prosecutor's good-faith effort to admit testimony does not constitute misconduct, so long as the attempt does not prejudice the defendant. *People v Noble,* 238 Mich App 647, 660-661; 608 NW2d 123 (1999). "A witness may be cross-examined on any matter relevant to any issue in the case, including credibility." MRE 611(c). A party may elicit "anything tending or which may tend to contradict, weaken, modify or explain the testimony on direct examination or which tends or may tend to elucidate the testimony or affect the credibility of the witness." *People v Dellabonda,* 265 Mich 486, 499-500; 251 NW 594 (1933).

We reject Quadrell's argument that the prosecutor's cross-examination of Kenneth's investigator had the effect of denigrating the role of defense counsel, as in *People v Hunt*, 68 Mich App 145, 148; 242 NW2d 45 (1976). Although the prosecutor asked general questions regarding the roles of defense attorneys, the testimony elicited from Kenneth's investigator indicated that a defense attorney's obligation is owed to both the client and the public. The testimony also indicated that a private investigator's task is to look for the truth.

Examined in context, the prosecutor was attempting to elicit general testimony regarding the differing roles of a private investigator and a police officer before exploring the particular tasks that Kenneth's investigator was retained to perform for Kenneth through his counsel. Considering that Kenneth's investigator had experience working in both roles, the prosecutor did not act in bad faith by asking him about the different roles. And considering that the relationship of a witness to a party is probative of a witness's bias, *People v Layher,* 464 Mich 756, 763; 631 NW2d 281 (2001), it was not inappropriate for the prosecutor to explore the relationship of the

witness to Kenneth through his counsel's retention of his investigative services. The prosecutor did not denigrate the role of defense attorneys or defense investigators through the cross-examination. Accordingly, there was no plain error.

Plaintiff concedes that it was improper for the prosecutor to ask Quadrell whether all of the other witnesses who testified about the lighting in the Poindexters' home were not telling the truth. "It is generally improper for a witness to comment or provide an opinion on the credibility or another witness, because credibility matters are determined by the jury." *Dobek,* 274 Mich App at 71. But considering that Quadrell was able to handle the prosecutor's isolated question through his affirmative answer and that a timely objection could have cured any perceived prejudice, reversal is not warranted. Cf. *People v Buckey,* 424 Mich 1, 17-18; 378 NW2d 432 (1985) (reversal not warranted where the prosecutor asked the defendant to comment on the credibility of prosecution witnesses, but the defendant dealt rather well with the questions and a timely objection could have cured any prejudice). Contrary to Quadrell's argument on appeal, the prosecutor's brief question did not distort the burden of proof. Indeed, the trial court instructed the jury before deliberations that the prosecution has the burden of proof. Also, in deciding the facts, the jury was instructed that it was responsible for deciding which testimony to believe. It may be presumed that the jurors followed their instructions. *Unger,* 278 Mich App 235.

Lastly, we reject Quadrell's argument that the cumulative effect of the prosecutor's questions requires a new trial. Having found just a single improper question that does not warrant appellate relief, there was no cumulative effect of several errors that deprived Quadrell of a fair trial. *People v Bahoda,* 448 Mich 261, 292 n 64; 531 NW2d 659 (1995); *Dobek,* 274 Mich App at 106.

### D. SENTENCING

Quadrell also seeks resentencing on the ground that the trial court erred in scoring OV 4, OV 13, and OV 14 of the sentencing guidelines.

As previously discussed in Kenneth's appeal, a victim's statements at Quadrell's sentencing regarding the continuing impact of the shooting on her mental state, including that she was "traumatized" by the shooting episode and cannot get rid of the feelings she gets whenever she thinks about what happened, was sufficient to support the trial court's assessment of 10 points for OV 4. *Hardy,* 494 Mich at 438; *Armstrong,* 305 Mich App at 247.

The trial court scored 10 points for OV 14, concluding that Quadrell was a leader in a multiple offender situation. MCL 777.44(1)(a). We disagree with Quadrell's argument that the evidence did not support his position as a leader. A "leader" is a person who is "in general, guiding, preceding, showing the way, directing, or conducting." *People v Rhodes,* 305 Mich App 85, 90; 849 NW2d 417 (2014). The entire criminal transaction should be considered when scoring this variable." MCL 777.44(2)(a). The evidence showed that Quadrell was the person who first arrived at the Poindexter home demanding to speak with Derrick. After Quadrell was turned away, he was observed making a phone call, and he returned a short time later with Kenneth and others. Quadrell and Kenneth both approached the house with guns. This evidence

supports the trial court's determination that Quadrell was a leader. Therefore, the trial court did not err in scoring 10 points for OV 14.

With respect to Quadrell's challenge to the scoring of 25 points for OV 13, Quadrell argued at sentencing that zero points should be scored for OV 13, but withdrew the objection after the prosecutor proposed that the court consider both current and prior convictions to score this variable. Another objection was made after the prosecutor requested that the score for OV 13 be increased from 10 to 25 points for three crimes against a person, but the only objection raised was that the alleged crimes were not contemporaneous. Quadrell did not raise the specific issue he now raises on appeal, which is that the court could not consider the crime of discharging a firearm at a building to score 25 points for OV 13, because that offense is not a crime against a person. An objection to the scoring of the guidelines on one ground is insufficient to preserve an appellate attack on a different ground. *Kimble,* 470 Mich at 309. Therefore, Quadrell's challenge to the scoring of OV 13 is not preserved. Accordingly, Quadrell is not entitled to appellate relief unless a plain error affected his substantial rights. *Id.* at 312; *Hershey,* 303 Mich App at 348.

A court is directed to score 25 points for OV 13 if "[t]he offense was part of a pattern of felonious activity involving a combination of 3 or more crimes against a person" or a violation of certain controlled substances laws. MCL 777.43(1)(c). In order to constitute a crime against a person, the offense must be designated as such under the statutory guidelines. *People v Bonilla-Machado,* 489 Mich 412, 426-427; 803 NW2d 217 (2011). In general, all crimes within a 5-year period are scored, except for conduct scored in OV 11 or OV 12. MCL 777.43(2)(a) and (c); *People v Bemer,* 286 Mich App 26, 33-34; 777 NW2d 464 (2009).

The trial court used Quadrell's prior conviction for larceny from a person and two current convictions, discharging a firearm at a building and assault with intent to do great bodily harm less than murder, to score 25 points for OV 13. Plaintiff concedes that the crime of discharging a firearm at a building could not be used to score 25 points for OV 13, because that crime is not designated as a crime against a person under the sentencing guidelines.[3] However, the inability to use that crime is not determinative of the proper scoring for OV 13, because there were other crimes committed at the Poindexters' home that did not result in separate convictions. While there was only one conviction for an assault crime predicated on the charge in the amended information that one or more of the occupants in the Poindexter's home were assaulted, the evidence established that there were nine occupants of the house when gunshots were fired into that home. To count as a crime for purposes of scoring OV 13, it is not necessary that it result in a separate conviction. MCL 777.43(2)(a).

And while Quadrell was convicted of assault within intent to do great bodily harm less than murder, OV 13 only requires that the crime constitute a felony. MCL 777.43(1)(c). It was sufficient that the evidence established a felonious assault against at least two other occupants of

---

[3] Pursuant to MCL 777.16m, discharging a firearm at a building is a public safety crime.

the Poindexter home under the prosecutor's aiding and abetting theory. See *People v Jackson,* 487 Mich 783, 787 n 2; 790 NW2d 340 (2010) (a felonious assault requires proof of an assault with a dangerous weapon and the intent to injure or place the victim in reasonable apprehension of an immediate battery); *People v Robinson,* 475 Mich 1, 15; 715 NW2d 44 (2006) ("[a] defendant is criminally liable for offenses that he intends to aid and abet, or has knowledge of, as well as those crimes that are the natural and probable consequences of the offense he intends to aid and abet").

In sum, a preponderance of the evidence established a felonious assault against multiple occupants of the Poindexter home. Those crimes, combined with Quadrell's prior conviction for larceny from a person, was more than sufficient to establish three or more crimes against a person necessary to score 25 points for OV 13. Therefore, Quadrell was not prejudiced by the trial court's error in considering the concurrent conviction of discharging a firearm at a building to score OV 13. Cf. *People v Harmon,* 248 Mich App 522; 640 NW2d 314 (2001) (score of 25 points upheld where it was supported by the defendant's concurrent convictions). Because there were other crimes to support the score of 25 points, Quadrell has failed to establish that the error in considering the conviction of discharging a firearm at a building affected his substantial rights. *Carines,* 460 Mich at 763; *Kimble,* 470 Mich at 312.

Lastly, Quadrell argues for the first time on appeal that the trial court violated his constitutional right to a jury trial and due process by engaging in judicial fact-finding to score multiple offense variables that affected the sentencing guidelines range, contrary to *Alleyne v United States,* 570 US ___ ; 133 S Ct 2151; 186 L Ed 2d 314 (2013). In *People v Lockridge*, ___ Mich ___; ___ NW2d ___ (2015) (Docket No. 149073); slip op at 1-2, our Supreme Court recently determined that *Alleyne* applies to Michigan's sentencing guidelines and renders them constitutionally deficient by requiring "judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables (OVs) that *mandatorily* increase the floor of the guidelines minimum sentence range, i.e., the 'minimum sentence' under *Alleyne*." The Court remedied the constitutional violation by severing MCL 769.34(2) "to the extent that it makes the sentencing guidelines range as scored on the basis of facts beyond those admitted by the defendant or found by the jury beyond a reasonable doubt mandatory." *Id.* at ___; slip op at 2. Our Supreme Court also struck the requirement in MCL 769.34(3) that a sentencing court articulate a substantial and compelling reason for departing from a sentencing guidelines range. *Id.* at ___; slip op at 2. The Court held, however, that the sentencing court must still determine the applicable guidelines range and take it into account when imposing sentence. *Id.* at ___; slip op at 2. But a guidelines range calculated in violation of *Alleyne is* advisory only, and the sentence imposed by the trial court is reviewed by an appellate court for reasonableness. *Id.* at___; slip op at 2.

Of particular relevance to this case, the Court stated that a defendant who fails to object to the scoring of the OVs at sentencing on *Alleyne* grounds must satisfy the plain error standard in *Carines*, 460 Mich at 774, to warrant appellate relief. *Lockridge*, ___ Mich at ___; slip op at 30. Where a case involves "a minimum sentence that is an upward departure, a defendant necessarily cannot show plain error because the sentencing court has already clearly exercised its discretion to impose a *harsher* sentence than allowed by the guidelines and expressed its reasons for doing so on the record." *Id.* at ___; slip op at 32 n 31.

Where a defendant was sentenced on or before July 29, 2015, the date of the *Lockridge* decision, the minimum sentence is not an upward departure, and the facts admitted by the defendant or found by the jury are insufficient to assess the minimum number of OV points needed for the defendant's score to fall within the guidelines range used to impose the sentence, a remand to the trial court is warranted for further inquiry to determine "whether the court would have imposed a materially different sentence but for the constitutional error. If the trial court determines that the answer to that question is yes, the court shall order resentencing." *Id.* at ___; slip op at 32-34. A remand is warranted because an appellate court will normally be unable to assess prejudice without knowing whether the trial court, with knowledge of the new sentencing regime, would have imposed a materially different sentence. *Id.* at ___; slip op at 33.

The circumstances of this case do not fall squarely within those addressed in *Lockridge* for application of the plain error standard to *Alleyne* errors. Although Quadrell's minimum sentence of 114 months for assault with intent to do great bodily harm is within the calculated guidelines range of 38 to 114 months, and that range is based in part on facts not admitted by the defendant or found by the jury, the trial court expressly indicated that it would impose the same sentence, even if an appellate court were to conclude that the range should be reduced, because of Quadrell's parole status and assaultive conduct. Because the court has already clearly expressed its intent to impose the sentence it did, even if the guidelines range was reduced, and it gave its reasons for doing so, remand for further inquiry is not warranted. Under the particular circumstances of this case, defendant cannot establish that he was prejudiced by any *Alleyne* error. The sentence imposed by the trial court is reasonable. *Lockridge*, ___ Mich ___; slip op at 2.

Affirmed.


/s/ Michael F. Gadola
/s/ Kathleen Jansen
/s/ Jane M. Beckering

-14-